JOSEPH J. ANDREWS, PLAINTIFF IN ERROR, *vs.* LEWIS W. POND, THOMAS M. CONVERSE, AND FRANCIS L. WADSWORTH, DEFENDANTS IN ERROR.

A bill of exchange, in payment of a debt due on a protested bill, was taken, in New York, from one of the parties to the protested bill. The exchange between Mobile, on which the bill was drawn, was stated to be ten per centum, and was added to the bill, and the damages on the protested bill, with interest, at the rate of interest in New York, from the time the first bill was protested, were added to the bill. It was sent to Mobile, and was placed to the credit of the drawees by the endorsee, who received it before it came to maturity. The bill was afterwards protested for non-payment. An action was brought in Alabama against the endorsers of the bill, one of whom was in New York when the bill was drawn, and who, being liable to suit on the protested bill, gave the second bill to prevent suit being brought against him. The defendants alleged usury in the second bill; the rate of exchange allowed on the bill, being ten per centum, was given, and it being alleged that the highest rate of exchange on Mobile did not exceed five per centum.

Although the transaction, as exhibited, appears, on the face of the account for which the bill was drawn, to be free from the taint of usury, yet if the ten per centum charged as exchange, or any part of it, was intended as a cover for usurious interest, the form in which it was done, and the name under which it was taken, will not protect the bill from the consequences of usury; and if the fact be established, it must be dealt with in the same manner as if the usury had been expressly mentioned in the bill itself. But whether the charge of ten per centum for exchange between New York and Mobile was intended as a cover for usury or not, is a question exclusively for the jury. It is a question of intention.

In order to enable the jury to decide whether the usury was concealed under the name of exchange, evidence on both sides ought to have been admitted, which tended to show the usual rate of exchange between New York and Mobile, when the bill was negotiated.

There is no rule of law fixing the rate which may be charged for exchange. It does not depend on the cost of transporting specie from one place to another; although the price of exchange is no doubt influenced by it.

The general principle in relation to contracts made at one place to be executed at another, is well settled. They are to be governed by the laws of the place of performance; and if the interest allowed by the laws of the place of performance be greater than that permitted at the place of the contract, the parties may stipulate for the higher interest, without incurring the penalties of usury.

When a contract has been made without reference to the laws of the state where it was made, or to the laws of the place of performance, and a rate of interest was reserved forbidden by the laws of the place where the contract was made, which was concealed under the name of exchange, in order to evade the law against usury, the question is not which law is to govern in executing the contract; unquestionably it must be the law of the state where the agreement was entered into, and the instrument taken to secure its performance. A contract of this kind cannot stand on the same principles with a bona fide agreement made in one place to be executed in another. In the last mentioned cases the agreements were permitted by the lex loci contractus, and will even be enforced there, if the party is found within its jurisdiction. But the same rule cannot be applied to contracts forbidden by its laws, and designed to evade them. In such cases the legal consequences of such an agreement must be decided by the law of the place where the contract was made. If void there, it is void everywhere.

A person who takes a bill, which on the face of it was dishonoured, cannot be allowed to claim the privileges which belong to a bona fide holder without notice. If he chooses to receive it under such circumstances, he takes it with all the infirmities belonging to it; and is in no better condition than the person from whom he received it. There can be no distinction in principle between a bill transferred after it is dishonoured for non-acceptance, and one transferred after it has been dishonoured for non-payment.

F 2            9

[Andrews *vs.* Pond et al.]

If, in consideration of further forbearance, a creditor receives a new security from his debtor for an existing debt, he cannot enlarge the amount due by exacting any thing, either by way of interest or exchange, for the additional risk, which he may suppose he runs by this extension of credit; nor on the opinion he may entertain as to the punctuality of payment, or the ultimate safety of his debt.

IN error to the Circuit Court of the United States for the southern district of Alabama.

The plaintiff in error instituted a suit on a bill of exchange, dated at New York on the 11th of March, 1837, drawn by D. Carpenter on Sayre, Converse and Company, Mobile, Alabama, for $7287 78 in favour of the defendants, Pond, Converse, and Company; payable and negotiable at the Bank of Mobile, sixty days after date.

The plaintiff in error was a citizen of New York, and the drawers and endorsers of the bill were citizens of Alexandria, Alabama.

The evidence in the Circuit Court proved that Lewis W. Pond, one of the defendants, was in New York in March, 1837, and being indebted to the plaintiff in the sum of six thousand dollars, on a bill which had been returned protested from Mobile, and on which suit was about to be brought by the plaintiff, agreed to pay ten per cent., the legal damages on the bill, and ten per cent. in addition, with the legal interest of New York on the bill for the time of its return, being eighteen days, and the charges of protest and postage, by a bill of exchange on Mobile. The bill was drawn in New York, being for the sum of $7287 78, and was endorsed by Mr. Pond, in the name of the firm, the defendants in error. The bill was endorsed by the plaintiff in error, and was remitted by the plaintiff to S. Andrews, at Mobile, and was by him set to the credit of H. A. Andrews and Company, of New York. It was received by S. Andrews, with the endorsement of the defendants, before its maturity; and it was a cash credit in the account current between H. M. Andrews and Company, and S. Andrews. The defendant offered evidence under the issue, the statute of New York against usury, and certain depositions, to prove that the bill of exchange was usurious.

One of the witnesses stated that the consideration for this bill was made up by the following account: E. Hendrick's draft on Daniel Carpenter, Montgomery, Alabama, protested, dated at New York, December 20th, 1836, at sixty days for — — $6000

| | | |
|---|---|---|
| Damages at 10 per cent., | 600 | |
| Interest 18 days at 7 per cent., | 21 | |
| Protest and postage, | 4 25 | |
| | | 625 25 |
| Exchange 10 per cent., being difference of exchange between Mobile and New York on the 11th March, 1837, | | 662 53 |
| | | $7287 78 |

John Delafield, President of the Phœnix Bank, examined on the part of the defendant, stated that the exchange between New York and Mobile on the 11th of March, 1837, was from three to five per

[Andrews *vs.* Pond et al.]

cent. This k.owledge of exchange was acquired from having dealt n exchange during the period, for the Phœnix Bank.

Robert White, cashier of the Manhattan Company, stated that, by ι reference to the books of the company, the exchange between New York and Mobile was, during the month of March, 1837, from five to seven per cent.: and Morris Robinson, agent for the Bank of the United States in the city of New York, said, that, during the month of March, 1837, he found by a reference to the books, the dealers with the bank were charged from three to five per cent.; three for short, and five for long paper.

The plaintiff excepted to the reading of the statute and laws of New York against usury: and in order to disprove the allegation of usury in the transaction, as the contract was not made subject to the statute laws of New York, and the contract was subject only to the laws of Alabama as to its obligatory form and solidity; and was or was not usurious according to these laws. The plaintiff then offered to prove by Joseph Wood, that the banks purchased bills at a far less exchange than others; that they never bought any other than undoubted paper; that from the facility of collecting, remitting, &c. they had many advantages over the citizens at large; and that the exchange of the banks was therefore much lower than that of the community at large: that there was no fixed rate of exchange between Mobile and New York; that it varied from one to twenty per cent., according to the solvency, punctuality, risk, &c. of the parties; that exchange was ever fluctuating, and was high or low as the risk was great or small. The Court refused to admit this testimony, and the plaintiff excepted.

The plaintiffs asked the Court to instruct the jury, that if they were satisfied that the excess over legal interest retained in this bill was taken and contracted for, innocently, by the parties, without intending to violate the laws against usury; they might find for the plaintiff. The Court refused to give this instruction, and the plaintiff excepted.

The plaintiff moved the Court to instruct the jury that the contract expressed in this bill of exchange, if to be executed in Alabama, was subject, alone, to the laws of Alabama against usury; and that the usury laws of New York had no force, or any thing to do with this investigation: this was refused by the Court, and plaintiff excepted.

The plaintiff next requested the court to charge the jury, that if they believed S. Andrews received the bill before maturity, for a valuable consideration, without any notice of usury, and that the plaintiff received it from S. Andrews, without notice of usury, and before maturity, that the plaintiff might recover; notwithstanding plaintiff offered no proof of the consideration he gave for it. The plaintiff excepted to this refusal of the Court.

The plaintiff next moved the Court to charge that the variance between the bill declared on, and the one set up as the same bill by defendant's deposition, was fatal in a plea of usury; to which the Court refused, and the plaintiff excepted.

It appeared that before the b . was delivered by S. Andrews to plaintiff, it had been, while in the hands of S. Andrews, protested for non-acceptance, which appeared on the face of the bill. There was no evidence of any settled account between H. M. Andrews & Co., and S. Andrews, or which was creditor or debtor upon the statement of accounts. It was also proved that the expense of transporting specie from New York to Mobile, including insurance and interest, would not exceed one and one half per centum on the sum transported.

Upon the whole case, and the several points stated, the Court charged the jury; that if they believed from the evidence, that by the usages of trade between New York and Mobile, there was an established rate of exchange between those places, the drawers and drawees of the bill of exchange here sued on, had a right to contract for such rates of exchange; and that even a higher rate to a small amount, if under the circumstances it did not appear to have been intended to evade the statute against usury might be allowed by them; but if they believed that no such usage existed, the parties had no right to contract for more than the actual expense of transportation of specie from one place to the other, including interest, insurance, and such reasonable variations therefrom, as above stated: and further, if they believed from the evidence that the drawers of the bill of exchange contracted with the drawers in the state of New York, at the time the bill was drawn, for a greater rate of interest than seven per centum per annum, for the forbearance of the payment of the sum of money specified in the bill; although it may have been taken in the name of exchange; the contract is usurious: and unless they believe from the evidence, that the plaintiff took the bill in the regular course of business, and upon a fair and valuable consideration bona fide paid by him, and without notice of the usury, they ought to find for the defendant; otherwise for the plaintiff: to which opinion, and charge of the Court, the plaintiff, by his counsel, excepted. The jury found a verdict for the defendants; and the plaintiff prosecuted this writ of error.

The case was argued by Webster, and Mr. D. F. Webster, for the plaintiff in error; and by Mr. Ogden for the defendants.

For the plaintiff it was insisted, by Mr. D. F. Webster:

1. That the contract in all that relates to interest, was to be governed by the law of Alabama.

2. That in the Court, sitting in Alabama, the defence of usury could not be set up under the general issue.

3. That certain evidence offered by the plaintiff on the question of usury, was improperly rejected.

4. That the rulings and direction of the Court on the points of law, as stated in the bill of exceptions, were erroneous.

The provisions of the laws of New York, 1 Revised Stat. 772, on the subject of usury, declare the contract, on which usury shall be

[Andrews *vs.* Pond et al.]

taken or received, absolutely void; with a saving from the influence of the statute as to bills of exchange, or promissory notes payable to order or to bearer in the hands of an indorsee; who shall have received the same in good faith and for a valuable consideration, and who had not at the time of discounting the bill actual notice that the bill had been originally given upon a usurious consideration, &c. By the laws of Alabama, the interest alone is forfeited.

It is contended that the contract is to be governed by the laws of the place where it was to be executed. The contract on the face of this bill of exchange expresses that it was to be executed elsewhere than where it was made. The parties entered into it with a view to its performance at another place. It is a foreign bill, (2 Peters, 586,) and of course is dated in one place, and in one state, and made payable in another state.

The lex loci is to govern, unless the parties have had in view, by the contract, another place of performance; that is to say, if the parties have in view, by the terms of the contract, the city of Mobile, for its performance, it is the law of the place of performance which is to govern and construe the terms of the agreement. 2 Burr, 1077. 8 John. 190. 4 Peters, 111. 7 Peters, 586. Alabama was not only the place where the contract was to be executed, but this action was instituted in Alabama.

2. As to the second point. Under the laws of Alabama, where on an usurious contract the interest only is forfeited, it was not allowable under a plea of non assumpsit, to put in evidence of usury; because although by the usury the interest is lost, yet the amount of the bill, deducting the interest, may be recovered. The lex loci is to be regarded, and the trial is to be conducted according to it; and what might under the plea be offered in evidence in New York, could not be admitted in Alabama. The plea was not sustained by the evidence, and did not suit the case.

Supposing the plaintiff to have been in that situation as to the bill, as to be liable to lose the interest on it, as upon a usurious contract, yet it was not under such a plea as this that evidence to charge him with this liability could have been admitted. Supposing that by the law of New York it was usury, yet it was to be punished by the laws of Alabama only.

But if, contrary to these views of the law, the statutes of New York on the subject of this contract are to be applied to it, yet, between the parties to this suit the law has no force. The statute of New York declares that its provisions shall have no application where there has been a bona fide holder of the bill, or an endorser thereof, without actual notice that the bill has been originally given for a usurious consideration. This is an action on a bill of exchange brought by the endorsee, and no proof was given on the trial that he was not an innocent holder, ignorant of the consideration given for this negotiable instrument. It does not anywhere appear to the contrary, but on the contrary the proof was clear and explicit that the bill had been regularly transferred to him before its maturity,

and had been placed as a credit in the accounts between him and the house in New York. Nor did it appear that the plaintiff had any knowledge of the asserted usury of the transaction. Supposing, then, that the law of New York must regulate the contract; yet on the proof submitted on the trial in the Circuit Court, the plaintiff ought to have recovered the amount of the bill.

3. The plaintiff in error contends, that certain evidence was refused by the Court which ought to have been given.

To prove the contract to have been usurious, certain depositions were read by the defendants; some going to show the original nature of the bill, and the circumstances under which it was made; and other witnesses were examined to show the rate of exchange between New York and Mobile.

The witnesses examined were all connected with banks; and they proved differences in the rates of exchange from three to five per cent.; and even seven per cent. Those institutions had great facilities in doing business in exchange; and they took undoubted and endorsed paper, at short dates. If there was any fixed rate of exchange between New York and Mobile, it would have been known to these witnesses; and it would have been stated. A charge beyond a fixed rate might be asserted to be usurious. But no fixed rate existed.

When the Circuit Court allowed the defendants to give evidence as to the rates of exchange between New York and Mobile, it would seem no more than proper that the privilege should be allowed to the plaintiff. The facts which would have been exhibited by such evidence were essential to the full exhibition of the plaintiff's case. Charges for exchange vary with the credit and position of the parties to the bills of exchange, and the length of time the bills have to run; with many other circumstances; and among them the balances of trade, influence the amount of such charges materially.

There was no unreasonable charge made upon this bill. It was taken to pay a protested draft, and from a party who had been on the dishonoured bill. The credit of such a bill must have been exceedingly doubtful; and the circumstances of the dishonour of its predecessor having been known, it would not have commanded as much as was allowed on it in the exchange market in New York, where it was received.

The plaintiff contends that the ruling and direction of the Court on the law were erroneous.

The plaintiff asked the Court to instruct the jury that if they were satisfied the excess over legal interest was taken by the parties, without intending to violate the law against usury, they should find for the plaintiff. The Court refused to give the instruction.

The question was one of intention. Did the parties mean to violate the law against usury? It was incumbent on the defendants to prove that the original parties to the bill intended usury; and that it was not considered by them a regular mercantile transaction. On the bill itself no usury appears. The parties giving the bill

consented to allow a high rate of exchange for the advantages which they obtained in the exemption of one of the defendants, then in New York, from a suit, which was about to be commenced on the protested bill.

The plaintiff was altogether disconnected with the circumstances under which this bill was originally given. He received it as a re-mittance from New York; and before it came to maturity it was placed to the credit of the house in New York as a cash credit. When he presented it for payment, it was refused on the ground of its having been made in fraud of the law of New York against usury. Thus, negotiable paper, which had passed through different hands, and which was obtained in good faith; was discredited by circumstances which could not have been known to the subsequent holders of it. A purchase of a bill of exchange may be made at any deduction from its amount; and the contract of purchase is legal.

The judge of the Circuit Court charged the jury that if there was no established rate of exchange between New York and Mobile, the parties had no right to contract for more than the actual expense of transporting specie. But by the evidence given on the part of the defendants, it was fully shown that there was no fixed rate of ex-change; and yet the contract was to be made usurious, because more was taken than the cost of transporting specie from Mobile to New York. Such a position destroys all operations of exchange, and thus interrupts the great means of commercial intercourse and deal-ing. Rates of exchange are fixed or regulated by other rules than those which would be derived from the value of specie at the place on which the bill may be drawn, and the cost of its carriage to the place from which the bill is sent. The experience of every com-mercial man, and the value of exchange in every commercial country establish this position.

Mr. Ogden, for the defendant, contended that the contract entered into by the bill of exchange on which the suit was brought having been made in New York, was to be governed by the laws of New York. An endorser of a bill of exchange is liable only by the law of the place where the bill is made. 3 Mass. Rep. 77. 5 East, 130. 1 East, 60. 8 Martin's Rep. 34. The law of the contract is the law of New York, where the debt was due; and where it was settled by the bill of exchange on which this suit was brought.

It is said that the evidence of usury could not be given under the plea of non assumpsit: but this is taking for granted that the law of the case is that of Alabama, and not that of New York. Evidence to show a usurious consideration is proper evidence under the plea.

There is no evidence of bona fide ownership of this bill in the plaintiff. The bill was remitted for collection; and the plaintiff was the agent of the drawee. The entry of the bill as a cash credit, does not affect this view of the case. It was no more than a mode of keeping the account between the drawer, and the person to whom the bill had been transmitted. The bill was taken in payment of

an old debt, and that debt is yet due : and for it the creditor has a perfect right to proceed at law.

It matters not what was the intention of the parties ; and if they had no view to a usurious dealing, still the law operates on the contract, and makes it void if there actually was usury. Where the months of a year are calculated to be thirty days, and interest for a year charged on each month, it was held to be usury.

Mr. Webster for the plaintiff in error. This is an action by the endorsee of a bill of exchange residing in Alabama, and the suit is brought in that state. The bill was drawn in New York, to be paid in Alabama ; and there is nothing in the record to show that the endorsee, the plaintiff, was in New York, or had any thing to do with the bill, until it came into his hands in Alabama. The defendants are described as citizens of Alabama ; and presumption is that it was endorsed in Alabama, and was an Alabama transaction.

The true place of the contract is the place of its performance ; and the law of Alabama operates upon this bill exclusively, as the contract made by it was to be performed there. Story's Conflict of Laws, 252. A bill drawn in New York, to pay eight per cent. interest in Alabama, where the interest is eight per cent., would not be void by the law of New York. Where there is no actual and express agreement to pay usurious interest, it is entirely a question of intention ; and the case to be made out is, that there was a design, either open or covered, to take more than the statute allows as interest.

There can be no rule of law which prohibits the purchase of a bill of exchange at any rate of discount ; or which makes such a purchase, if the discount is more than the legal interest, usury. The rates of exchange are always various, and are sometimes uncertain. To apply the law of usury to such contracts would be productive of the greatest injustice.

The law of New York protects all these instruments from the prohibitions of usury, when they get into the hands of bona fide holders without notice of their origin. Every one may buy a bill of exchange in the market at any rate ; but if the purchaser sells a bill, with his name upon it, at an illegal discount, it is usury, and the bill is void. Every thing in relation to this bill should have been admitted in evidence : and the jury should have been enabled to form a judgment on the intention of the parties ; and should have been allowed to know every thing as to the state of the exchange between New York and Mobile, and the rate, as applied to bills of all descriptions. One of the witnesses would have proved that twenty per cent. was not a greater rate of exchange than had been paid on doubtful bills.

The party taking the bill had a right to recover from his debtor, such an amount as would have paid the amount due to him on the protested bill of exchange in New York. He had a right, then, to the exchange on Mobile, and the exchange from Mobile to New

York. It is manifest that, even on this evidence of the defendants, if this were proper and just, the sum taken as exchange was even less than it should have been.

Mr. Chief Justice TANEY delivered the opinion of the Court.—

This case comes before the Court upon a writ of error, directed to the judges of the Circuit Court for the ninth circuit and southern district of Alabama.

The action was brought by the plaintiff as endorsee, against the defendants as endorsers of a bill of exchange in the following words:—

"Exchange for $7287$\frac{78}{100}$. _New York, March_ 11, 1837.

"Sixty days after date of this first of exchange, second of same tenour and date unpaid, pay to Messrs. Pond, Converse, and Wadsworth, or order, seven thousand two hundred and eighty-seven $\frac{78}{100}$ dollars, negotiable and payable at the Bank of Mobile, value received, which place to the account of

"Your obedient servant

"To Messrs. Sayre, Converse & Co. }     "D. CARPENTER."
Mobile, Alabama." }

The case, as presented by the record, appears to be this. The defendants were merchants, residing in Mobile, in the state of Alabama. H. M. Andrews and Co. were merchants residing in New York; and before the above mentioned bill was drawn, the defendants had become liable to H. M. Andrews and Co. as endorsers upon a former bill for $6000, drawn by E. Hendricks on Daniel Carpenter, of Montgomery, Alabama. The last mentioned bill was dated at New York, and fell due on the 21st of February, 1837, and was protested for non-payment. The defendant Pond, it seems, was in New York in the month of March, 1837, shortly after this protest; when H. M. Andrews and Co. threatened to sue him on the protested bill: and the defendant Pond, rather than be sued in New York, agreed to pay H. M. Andrews and Co. ten per cent. damages on the protested bill, and ten per cent. interest and exchange on a new bill to be given, besides the expenses on the protested bill.

According to this agreement an account, which is given in the record, was stated between them on the 11th of March, 1837, in which the defendants were charged with the protested bill, and ten per cent. damages on the protest, and interest and expenses, which amounted altogether to the sum of $6625 25, and ten per cent. upon this sum was then added, as the difference of exchange between Mobile and New York, which made the sum of $7287 78; for which the defendant Pond delivered to H. M. Andrews and Co. the bill of exchange upon which this suit is brought, endorsed by the defendants in blank. The bill was remitted by H. M. Andrews and Co. to S. Andrews, at Mobile, for collection. The drawees refused to accept it, and it was protested for non-acceptance; and after this refusal

[Andrews *vs.* Pond et al.]

and protest, it was transferred by S. Andrews to J. J. Andrews, the present plaintiff. It is stated in the exception, that after this transfer it was a cash credit in the account between H. M. Andrews and Co. and S. Andrews. The bill was not paid at maturity, and this suit is brought to recover the amount.

There is no question between the parties as to the principal or damages of ten per cent. charged for the protested bill of $6000; nor as to the interest and expenses charged in the account herein before mentioned. The defendants admit that the principal amount of the protested bill, the damages on the protest which are given by the act of assembly of New York, and the interest and expenses, were properly charged in the account. The sum of $6625 25 was therefore due from them to H. M. Andrews and Co. on the day of the settlement, payable in New York. The dispute arises on the item of $662 53, charged in the account as the difference of exchange between New York and Mobile, and which swelled the amount for which the bill was given to $7287 78. The defendants allege that the ten per cent. charged as exchange, was far above the market price of exchange at the time the bill was given, and that it was intended as a cover for usurious interest exacted by the said H. M. Andrews and Co. as the price of their forbearance for the sixty days given to the defendants. This was their defence in the Circuit Court, where a verdict was found for the defendants under the directions given by the Court.

Many points appear to have been raised at this trial, which are stated as follows, in the exception taken by the plaintiff.

The defendant offered evidence—

1. To prove that the said bill of exchange was usurious, according to the statute and laws of the state of New York. The plaintiff objected to the reading of the statute and depositions aforesaid, because the contract was not made with a view of the statute or laws of New York. But the bill of exchange was usury or not by the laws and statutes of Alabama; and that the contract was subject only to the laws of the state of Alabama, as to its obligatory force and validity: and he further objected, that if this contract were to be decided by the statute of New York, that this proof could not be given under this issue: but the Court overruled all these objections, and permitted the depositions and statute to be read, to show the bill of exchange to be void by the laws of New York: to all which plaintiff excepts.

2. Plaintiff then offered to prove by Joseph Wood, that the banks purchased bills at a far less rate of exchange than others, that they never bought any than undoubted paper; that from the facility of collecting, remitting, &c. they had many advantages over the citizens at large, and that the exchange of the banks was therefore much lower than the community at large; that there was no fixed rate of exchange between Mobile and New York; that it varied from one to twenty per cent. according to the solvency, punctuality, risk, &c.; that exchange was ever fluctuating, and was high or low as

the risk was great or small. The Court rejected this testimony also, to which plaintiff excepts.

3. Plaintiff asked the Court to instruct the jury, that if they were satisfied that the excess over legal interest retained in this bill was taken and contracted for innocently by the parties; without intending to violate the laws against usury; that they might find for plaintiff: but the Court refused this also, and plaintiff excepts.

4. Plaintiff moved the Court to charge the jury that the contract expressed in this bill of exchange, if to be executed in Alabama, was subject alone to the laws of Alabama against usury; and that the usury laws of New York had no force, or any thing to do with this investigation. This was refused by the Court, and plaintiff excepts.

5. Plaintiff next requested the Court to charge the jury, that if they believed S. Andrews received the bill before maturity, for a valuable consideration, without any notice of usury, and that plaintiff received it from S. Andrews, without notice of usury, and before maturity, that the plaintiff might recover; notwithstanding plaintiff offered no proof of the consideration he gave for it. To this refusal there was also an exception.

6. Plaintiff next moved the Court to charge that the variance between the bill declared on, and the one set up as the same bill by defendants' deposition, was fatal in a plea of usury; to which the Court refused, and plaintiff excepts.

7. It appeared that before the bill was delivered by S. Andrews to the plaintiff, it had been, while in the hands of S. Andrews, protested for non-acceptance, which appeared on the face of the bill. There was no evidence of any settled account between H. M. Andrews and Co. and S. Andrews, or which was creditor or debtor upon the statement of accounts. It was also proved that the expense of transporting specie from New York to Mobile, including insurance and interest, would not exceed one and one-half per cent. on the sum transported. Upon the whole case, and the several points stated, the Court charged the jury, that if they believed from the evidence, that by the usages of trade between New York and Mobile, there was an established rate of exchange between those places, the drawers and drawees of the bill of exchange here sued on, had a right to contract for such rates of exchange; and that even for a higher rate to a small amount, if under the circumstances it did not appear to have been intended to evade the statute against usury, might be allowed by them.

8. But if they believed that no such usage existed, the parties had no right to contract for more than the actual expense of transportation of specie from one place to the other, including interest, insurance, and such reasonable variations therefrom, as above stated.

9. And, further, if they believed from the evidence, that the drawers of the bill of exchange contracted with the drawee in the state of New York, at the time the bill was drawn, for a greater rate of interest than seven per centum per annum, for the forbearance

of the payment of the sum of money specified in the bill, although it may have been taken in the name of exchange, the contract is usurious; and unless they believe from the evidence, that the plaintiff took the bill in the regular course of business, and upon a fair and valuable consideration bona fide paid by him, and without notice of the usury, they ought to find for the defendants, otherwise for the plaintiff.

From the manner in which the points are arranged in this exception, and the similarity of the questions presented in some of them, we shall be better understood by expressing our opinion on the whole case, as it appears before us, without regarding the order in which the questions are stated in the exception; and without examining separately each one of the instructions asked for by the plaintiff, and refused by the Court.

The transaction, upon the face of it, does not profess to charge any interest for forbearance. It is a bill of exchange in the usual form; and in the account stated at the time, and which formed the basis of the bill, the only item in relation to interest is the small sum charged for the eighteen days which intervened between the time when the first bill became due and the present one was given. This interest is charged at seven per cent., which is the legal rate of interest established in New York. The transaction, taken altogether, was indeed a ruinous one on the part of the defendants. A debt of $6000, payable at Mobile on the 21st of February, was converted into a debt of $7287 78, payable at the same place on the 25th of April following; being an increase of $1287 78 in the short space of eighty-one days. Yet, if the defendants brought it upon themselves by their failure to take up the first bill at maturity, and the transaction was not intended to cover usurious interest, they must meet the consequence of their own improvidence. The sum of $6625 25 was undoubtedly due from them to H. M. Andrews and Co. on the day the bill in question was drawn. They were entitled to demand that sum in New York, or a bill that was equivalent to it at the market price of exchange; and if ten per cent. discount was the usual price at which others purchased bills of this description in the market of New York, they had a right to take the bill at that rate, in satisfaction of their debt. There is nothing, therefore, upon the face of the papers, from which the Court can undertake to say that usurious interest was exacted.

But although the transaction, as exhibited in the account, appears on the face of it to have been free from the taint of usury, yet if the ten per cent. charged as exchange, or any part of it, was intended as a cover for usurious interest, the form in which it was done, and the name under which it was taken, will not protect the bill from the consequences of usurious agreements; and if the fact be established, it must be dealt with in the same manner as if the usury was expressly contracted for in the bill itself. But whether this item was intended as a cover for usury or not, is a question exclusively for the jury. It is a question of intent. And in order

to enable the jury to decide whether usury was concealed under the name of exchange; evidence on both sides ought to have been admitted, which tended to show the usual rate of exchange between New York and Mobile, when this bill was negotiated. There is no rule of law fixing the rate which may be lawfully charged for exchange. It does not altogether depend upon the cost of transporting specie from one place to another; although the price of exchange is, no doubt, influenced by it. But it is also materially affected by the state of the trade, by the urgency of the demand for remittances, and by the quantity brought into the market for sale: and sometimes material changes take place in a single day, although no alteration has happened in the expenses of transporting specie. The Court, therefore, can lay down no rule upon the subject. H. M. Andrews and Co., when about to take this bill in payment of an existing debt, had a right to include in it a fair allowance for the difference in exchange. Whether they exacted more or not, for the forbearance of their debt, is a question for the jury to decide: and in order to enable them to decide it correctly, they must be allowed to hear the evidence which either of the parties may offer, as to the rates of exchange for such a bill as this; which was payable in specie, and not in any depreciated currency. Taking this view of the subject, we think the Court below erred in rejecting the testimony of Joseph Wood, who was offered by the plaintiff to prove the rate of exchange; and also in the direction given to the jury, that if there was no fixed rate of exchange, the creditor had a right to take no more than the actual expense of transporting the specie, or a small amount more, where the addition was not intended to cover usury.

Another question presented by the exception, and much discussed here is, whether the validity of this contract depends upon the laws of New York or those of Alabama. So far as the mere question of usury is concerned, this question is not very important. There is no stipulation for interest apparent upon the paper. The ten per cent. in controversy is charged as the difference in exchange only, and not for interest and exchange. And if it were otherwise, the interest allowed in New York is seven per cent., and in Alabama eight; and this small difference of one per cent. per annum, upon a forbearance of sixty days, could not materially affect the rate of exchange, and could hardly have any influence on the inquiry to be made by the jury. But there are other considerations which make it necessary to decide this question. The laws of New York make void the instrument when tainted with usury; and if this bill is to be governed by the laws of New York, and if the jury should find that it was given upon an usurious consideration, the plaintiff would not be entitled to recover; unless he was a bona fide holder, without notice, and had given for it a valuable consideration: while by the laws of Alabama he would be entitled to recover the principal amount of the debt, without any interest.

The general principle in relation to contracts made in one place

G 2

to be executed in another, is well settled. They are to be governed by the law of the place of performance—and if the interest allowed by the laws of the place of performance, is higher than that permitted at the place of the contract, the parties may stipulate for the higher interest, without incurring the penalties of usury. And in the case before us, if the defendants had given their note to H. M. Andrews and Co., for the debt then due to them, payable at Mobile, in sixty days, with eight per cent. interest, such a contract would undoubtedly have been valid; and would have been no violation of the laws of New York, although the lawful interest in that state is only seven per cent. And, if in the account adjusted at the time this bill of exchange was given, it had appeared that Alabama interest of eight per cent. was taken for the forbearance of sixty days given by the contract; and the transaction was in other respects free from usury; such a reservation of interest would have been valid and obligatory upon the defendants; and would have been no violation of the laws of New York.

But that is not the question which we are now called on to decide. The defendants allege that the contract was not made with reference to the laws of either state, and was not intended to conform to either. That a rate of interest forbidden by the laws of New York, where the contract was made, was reserved on the debt actually due; and that it was concealed under the name of exchange, in order to evade the law. Now, if this defence is true, and shall be so found by the jury, the question is not which law is to govern in executing the contract; but which is to decide the fate of a security taken upon an usurious agreement, which neither will execute? Unquestionably, it must be the law of the state where the agreement was made, and the instrument taken to secure its performance. A contract of this kind cannot stand on the same principles with a bona fide agreement made in one place to be executed in another. In the last mentioned cases the agreements were permitted by the lex loci contractus; and will even be enforced there, if the party is found within its jurisdiction. But the same rule cannot be applied to contracts forbidden by its laws and designed to evade them. In such cases, the legal consequences of such an agreement must be decided by the law of the place where the contract was made. If void there, it is void everywhere; and the cases referred to in Story's Conflict of Laws, 203, fully establish this doctrine.

In the case of De Wolfe vs. Johnson, 10 Wheat. 383, this Court held that the lex loci contractus must govern in a question of usury; although by the terms of the agreement the debt was to be secured by a mortgage on real property in another state. And the case of Dewar vs. Shaw, 3 T. R. 425, shows with what strictness the English Courts apply their own laws against usury to contracts made in England. In the case under consideration, the previous debt for which the bill was negotiated was due in New York; a part of it, that is to say, the damages on the protest of the first bill

were given by a law of that state; and the debt was then bearing the New York interest of seven per cent., as appears by the account before referred to. And, if in consideration of further indulgence in the time of payment, the parties stipulated for a higher interest, and agreed to conceal it under the name of exchange; the validity of the instrument, which was executed to carry this agreement into effect, must be determined by the laws of New York, and not by the laws of Alabama.

In this aspect of the case, another question arose in the trial in the Circuit Court. By the laws of New York, as they then stood, usury was no defence against the holder of a note or bill who had received it in good faith, and to whom it was transferred for a valuable consideration, and without notice of the usury. The present plaintiff claims the benefit of this provision. But upon the evidence in the case, it is very clear that he does not bring himself within it. The bill of exchange was protested for non-acceptance, while it was in the hands of S. Andrews, the agent of H. M. Andrews and Co., to whom it had been sent for collection; and this fact appeared on the face of the bill at the time it was transferred to the plaintiff. Now, a person who takes a bill, which upon the face of it was dishonoured, cannot be allowed to claim the privileges which belong to a bona fide holder without notice. If he chooses to receive it under such circumstances, he takes it with all the infirmities belonging to it; and is in no better condition than the person from whom he received it. There can be no distinction in principle between a bill transferred after it is dishonoured for non-acceptance, and one transferred after it is dishonoured for non-payment; and this is the rule in the English Courts, as appears by the case of Crossley vs. Ham, 13 East, 498. Now it is evident, that no consideration passed between Carpenter, the drawer of the bill, and the defendants, who are the payers and endorsers. The bill was made and endorsed by the defendants, for the purpose of being delivered to H. M. Andrews and Co., in execution of the agreement for further indulgence. And if that agreement was usurious, then the bill in question was tainted in its inception; and that taint must continue upon it in the hands of the present plaintiff.

There is one other direction given by the Circuit Court, which remains to be considered. It is the third, as stated in the exception. The vagueness and generality of the terms in which this instruction was asked for by the counsel for the plaintiff, justified the Court in refusing it. It will be seen from what we have already said, that if the rate of exchange taken upon this bill was a fair one, and was not intended to cover usurious interest, the plaintiff is entitled to recover; and if the payer means nothing more than this, there could be no objection to it. But, if it was intended to maintain that although a higher rate of exchange was allowed than the fair market price, and that this was done in consideration of the forbearance of payment, under the belief that the law would not in that shape regard it as usury, the mistake of the parties in this respect,

will not alter the character of the transaction. The instruction as asked for was framed in such general terms, that it might have misled the jury; and the Court, therefore, were not bound to give it.

In fine, if the parties intended to allow no more than a fair rate of exchange, testing it by the market price of good bills of this description, it was not usury; and the plaintiff is entitled to recover. If, on the contrary, more was intended to be taken, it was usury; and the plaintiff is not entitled to recover. It is true, that after this bill had been negotiated between H. M. Andrews and Co. and the defendants, other persons might have lawfully purchased it at a much greater discount than the market rate of exchange; and might have considered and estimated in the price they gave for it, the known embarrassments, the want of punctuality, and the loss of credit of the defendants, whose former bill had already been protested. But, as between the debtor and his creditor, no difference in the rate of exchange can be made on that account. If, in consideration of further forbearance, the creditor receives a new security from his debtor for an existing debt, he cannot enlarge the amount due by exacting any thing either by way of interest or exchange, on account of the additional risk he may suppose he runs by this extension of credit; nor on account of any doubts he may entertain as to the punctuality of payment, or the ultimate safety of his debt.

It is hardly necessary to add, that the right of the defendant to offer in evidence, under the plea of non assumpsit, that the instrument was given upon an usurious contract, has been too well settled to be now disputed: and we see nothing in the record, upon which a question for the Court could be raised, upon the supposed variance between the bill mentioned in the testimony produced by the defendants, and the bill declared on by the plaintiff.

Upon the whole, we dissent from the Circuit Court in the second and eighth points in the exception, as we have already mentioned; and we concur with them in the residue.

The judgment of the Circuit Court must, therefore, be reversed with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the southern district of Alabama, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed with costs; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a venire facias de novo.