# MISSOURI, KANSAS & TEXAS TRUST COMPANY *v.* KRUMSEIG.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 66.  Argued December 2, 1898. — Decided January 3, 1899.

Usury is a statutory offence, and Federal courts, in dealing with such a question, must look to the laws of the State where the transaction took place, and follow the construction put upon such laws by the state courts.

When a State thinks that the evils of usury are best prevented by making usurious contracts void, and by giving a right to the borrowers to have such contracts unconditionally nullified and cancelled by the courts, as in this case, such a view of public policy, in respect to contracts made within the State and sought to be enforced therein, is obligatory on the Federal courts, whether acting in equity, or at law; and the local law, consisting of the applicable statutes, as construed by the Supreme Court of the State, furnishes the rule of decision.

These views are not applicable to cases arising out of interstate commerce, where the policy to be enforced is Federal.

Whether the contract between the parties in this case was, as a contract of life insurance, void because the defendant had not complied with the statutes of Minnesota, has not been considered by the court.

In May, 1894, Theodore M. Krumseig and Louise Krumseig filed in the district court of the eleventh judicial district of Minnesota a bill of complaint against the Missouri, Kansas and Texas Trust Company, a corporation of the State of Missouri, praying that, for reasons alleged in the bill, a certain mortgage made by complainants on the 5th day of September, 1890, and delivered to the defendant, and by it recorded, and certain notes therein mentioned, might be cancelled, and the defendant be permanently enjoined from enforcing the same. The defendant thereupon, by due proceedings, removed the cause to the Circuit Court of the United States for the District of Minnesota, where the Union Trust Company of Philadelphia was made a co-defendant, and the case was so proceeded in that, on October 22, 1895, a final decree was entered, granting the prayers of the complainants, declaring the said mortgage and notes to be void, and enjoining the defendants from ever taking any action or proceeding for their enforcement. 71 Fed. Rep. 350.

From this decree an appeal was taken to the Circuit Court of Appeals for the Eighth Circuit, where, on November 5, 1896, the decree of the Circuit Court was affirmed. 40 U. S. App. 620. On March 20, 1897, on petition of the Missouri, Kansas and Texas Trust Company, a writ of certiorari was awarded whereby the record and proceedings in said cause were brought for review into this court.

*Mr. William C. White* for the Trust Company.

*Mr. J. B. Richards* for Krumseig.

Mr. Justice Shiras, after making the above statement, delivered the opinion of the court.

The bill of complaint alleged that on July 27, 1890, Theodore M. Krumseig, one of the complainants, made a written

application to defendant, a corporation of the State of Missouri, for a loan of $2000, to be secured upon real estate in the city of Duluth, Minnesota, and among the conditions in the said application was the following :

" In consideration of the above premises, I agree to execute and deliver to the said company ten promissory notes, each of the sum of $360, payable in monthly instalments of $30, commencing at date of signing contract.   The said notes aver principal sum loaned, interest and cost of guarantee to cancel debt in case of death, and shall be secured by good and sufficient deed of trust or mortgage executed by myself and wife on said ground and improvements.   The contract hereafter to be entered into, if my application shall be accepted and contract entered into in writing between myself and said company, shall provide that the mortgage or deed of trust given to secure the above notes shall contain a clause guaranteeing in case of my death before payment of any unpaid instalments, a release of unpaid portion of debt, if I shall have promptly paid previous instalments and kept other conditions.   As part of foregoing condition I agree, before acceptance of this application and the execution of said contract, to pass such medical examination as may be required by said company, and to pay said company the usual $3 fee therefor, and to pay all fees for recording deed of trust or mortgage."

The bill further alleged that thereupon Krumseig passed the medical examination required, paid the fee demanded, and complainants then executed ten certain promissory notes, each for the sum of $360, dated September 5, 1890, payable in monthly instalments of $30, with interest at ten per cent after due, forty-one of which instalments, amounting to $1230, have been paid; on the same day, in order to secure these notes, they executed and delivered to the defendant a mortgage on the premises, with the usual covenants of warranty and defeasance, reciting the indebtedness of $3600, in manner and form aforesaid, and containing the following clause:

" And it is further understood and agreed by and between the said parties of the first part, their executors, administrators or assigns, and the said party of the second part, the Missouri,

Kansas and Texas Trust Company, that in case the said Theodore M. Krumseig, one of the parties of the first part, should die after the execution and delivery of the said notes and this mortgage, and within ten years thereafter, each and every of the said notes remaining unpaid at the said date shall be surrendered to the executors or administrators of the said Theodore M. Krumseig, one of the parties of the first part, and this mortgage shall be cancelled and satisfied ; provided, however, that said parties of the first part shall have promptly paid each monthly instalment that shall have become due prior to his death according to the terms of the notes hereinbefore mentioned, and that he has not committed suicide within two years, and has not without written consent of the party of the second part visited the torrid zone, or personally engaged in the business of blasting, mining or submarine operations, or in the manufacture, handling or transportation of explosives, or entered into the service of any railroad train, or on a steam or sailing vessel for two years."

The bill further alleged that the sole consideration for the notes and mortgage was: 1st, the sum of $1970, together with the interest thereon from date until maturity of the instalment notes; and, 2d, the clause in the mortgage last referred to, which latter was in fact an arrangement between the respondent and the Prudential Life Insurance Company of Newark, New Jersey, to save the former harmless from any loss that might occur to it in case of the death of the complainant, Theodore M. Krumseig, during the term covered by the mortgage. It was also alleged that the defendant company had not complied with the laws of the State of Minnesota governing life insurance companies, and that the contract was therefore void. The bill prayed that the mortgage be cancelled of record and the remaining notes should be delivered up to them.

The answer denied that the contract was usurious, and alleged that the sum of $1970, received by complainants with the legal interest thereon and the cost of the guaranty of defendant to cancel the loan in case of the death of Theodore M. Krumseig during the continuance of the contract, consti-

tuted a full and ample consideration for the notes and mortgage in question, and that the same was so understood and agreed to by complainants at the time of the execution of the contract.

The Circuit Court did not consider it necessary to pass upon the question whether the contract was one of life insurance, and hence void, for the admitted fact that the defendant company had not complied with the laws of Minnesota respecting life insurance companies; but regarded the contract as one for the security and payment of borrowed money, and, under the facts, as usurious and void under the statute of Minnesota; and granted the relief prayed for in the bill. 71 Fed. Rep. 350.

The Circuit Court of Appeals affirmed the decree of the Circuit Court. Two of the judges concurred in holding that the contract was usurious, and that the complainants were therefore entitled to the relief prayed for. One of the two judges so holding construed the contract as one of life insurance, and hence also void under the Minnesota laws. The third judge, while apparently concurring in the view that the contract was usurious, thought that the complainants were not entitled to a remedy for a reason which we shall presently consider. 40 U. S. App. 620.

Usury is, of course, merely a statutory offence, and Federal courts in dealing with such a question must look to the laws of the State where the transaction took place, and follow the construction put upon such laws by the state courts. *De Wolf* v. *Johnson*, 10 Wheat. 367; *Scudder* v. *Union National Bank*, 91 U. S. 406.

Section 2212, General Statutes of Minnesota of 1894, provides that upon the loan of money any charge above ten per cent shall be usurious; and section 2217 provides that " whenever it satisfactorily appears to a court that any bond, bill, note, assurance, pledge, conveyance, contract, security or evidence of debt has been taken or received in violation of the provisions of this act, the court shall declare the same to be void, and enjoin any proceedings thereon, and shall order the same to be cancelled and given up."

As was said in *De Wolf* v. *Johnson*, above cited, it does not,

in general, comport with a negotiation for a loan of money that anything should enter into the views of the parties, but money, or those substitutes which, from their approximation to money, circulate with corresponding, if not equal, facility. Still, however, like every other case, it is open to explanation, and the question always is whether it was or was not a subterfuge to evade the laws against usury. The books contain many cases where artful contrivances have been resorted to, whereby the lender is to receive some other advantage or thing of value beyond the repayment of the loan with legal interest. Sometimes the agreement has taken the form of the purchase of an annuity. More frequently there is a collateral agreement whereby the borrower is to purchase an article of property and to pay therefor more than its intrinsic value. It has been frequently held that to constitute usury, where the contract is fair on its face, there must be an intention knowingly to contract for or to take usurious interest, but mere ignorance of the law will not protect a party from the penalties of usury. *Lloyd* v. *Scott*, 4 Pet. 205.

The precise character of the contract between the present parties is not clear. It has some of the features of a loan of money; in other respects it resembles a contract of life insurance. But our examination of its various provisions and of their legal import has led us to accept the conclusion of courts below, that the scheme embodied in the application, notes and mortgage was merely a colorable device to cover usury. The Supreme Court of Minnesota has more than once had occasion to consider this very question. In the case of *Missouri, Kansas & Texas Trust Co.* v. *McLachlan*, 59 Minn. 468, that court said:

" The peculiar and unusual provisions of this contract themselves constitute intrinsic evidence sufficient to justify the finding of the existence of every essential element of usury, viz., that there was a loan; that the money was to be returned at all events, and that more than lawful interest was stipulated to be paid for the use of it. The only one of these which could be seriously claimed to be lacking was that the money was not to be paid at all events, but only upon a contingency,

to wit, the continuance of the life of McLachlan; but the facts warrant the inference that this contingency was not *bona fide*, but was itself a mere contrivance to cover usury. The mere fact that the contract has the form of a contingency will not exempt it from the scrutiny of the court, which is bound to exercise its judgment in determining whether the contingency be a real one, or a mere shift and device to cover usury."

Similar views were expressed in the subsequent case of *Matthews* v. *Missouri, Kansas & Texas Trust Co.*, 72 N. W. Rep. 121, where the Supreme Court of Minnesota again reached the conclusion that the notes and mortgage, forming a contract between the same trust company and one Matthews, were usurious and void.

The next question for our consideration is one not free from difficulty. Can a borrower of money upon usurious interest successfully seek the aid of a court of equity in cancelling the debt without making an offer to repay the loan with lawful interest?

Undoubtedly the general rule is that courts of equity have a discretion on this subject, and have prescribed the terms on which their powers can be brought into activity. They will give no relief to the borrower if the contract be executory, except on the condition that he pay to the lender the money lent with legal interest. Nor, if the contract be executed, will they enable him to recover any more than the excess he has paid over the legal interest. *Tiffany* v. *Boatman's Institution*, 18 Wall. 375.

But what, in such a case, is held to be the law by the courts of the State of Minnesota? Under the statutory provision already cited, that whenever it satisfactorily appears to a court that any bond, bill, note, assurance, pledge, conveyance, security or evidence of debt has been taken or received in violation of the provisions of this act the court shall declare the same to be void, and enjoin any proceeding thereon, and shall order the same to be cancelled and given up, the Supreme Court of Minnesota has repeatedly held that a plaintiff suing to cancel a Minnesota contract for usury need not offer to repay the money loaned. *Scott* v. *Austin*, 36 Minn. 460;

*Exley* v. *Berryhill*, 37 Minn. 182; *Matthews* v. *Missouri, Kansas & Texas Trust Co.*, 72 N. W. Rep. 121.

Under statutes providing that, in cases of usury, the borrower is entitled to relief without being required to pay any part of the usurious debt or interest as a condition thereof, it has been held by the courts of New York and of Arkansas that courts of equity are constrained by the statutes, and must grant the relief provided for therein without applying the general rule that a bill or other proceeding in equity, to set aside or affect a usurious contract, cannot be maintained without paying or offering to pay the amount actually owed. *Williams* v. *Fitzhugh*, 37 N. Y. 444; *Lowe* v. *Loomis*, 53 Ark. 454.

But it is strenuously argued, and of that opinion was Circuit Judge Sanborn in the present case, that Federal courts, in the exercise of their equity jurisdiction, do not receive any modification from the legislation of the States or the practice of their courts having similar powers, and that consequently no act of the legislature of Minnesota could deprive the Federal courts sitting in equity of the power or relieve them of the duty to enforce and apply the established principle of equity jurisprudence to this case that he who seeks equity must do equity, and to require the appellees to pay to the appellant what they justly owe for principal and lawful interest as a condition of granting the relief they ask.

We think it a satisfactory reply to such a proposition that the complainants in the present case were not seeking equity, but to avail themselves of a substantive right under the statutory law of the State. It seems to be conceded, or, if not conceded, it is plainly evident, that if the cause had remained in the state court where it was originally brought, the complainant would have been entitled, under the public policy of the State of Minnesota, manifested by its statutes as construed by its courts, to have this usurious contract cancelled and surrendered without tendering payment of the whole or any part of the original indebtedness. The defendant company could not, by removing the case to the Federal court, on the ground that it was a citizen of another State, deprive the complainants of such a substantive right. With the policy of the state

legislation the Federal courts have nothing to do. If the States, whether New York, Arkansas, Minnesota or others, think that the evils of usury are best prevented by making usurious contracts void, and by giving a right to the borrowers to have such contracts unconditionally nullified and cancelled by the courts, such a view of public policy, in respect to contracts made within the State and sought to be enforced therein, is obligatory on the Federal courts, whether acting in equity or at law. The local law, consisting of the applicable statutes as construed by the Supreme Court of the State, furnishes the rule of decision.

In *Clark et al.* v. *Smith*, 13 Pet. 195, it was said that " where the legislature declares certain instruments illegal and void, as the British annuity act does; or as the gaming acts do; there is inherent in the courts of equity a jurisdiction to order them to be delivered up, and thereby give effect to the policy of the legislature. . . . The state legislatures have, certainly, no authority to prescribe the forms and modes of proceeding in the courts of the United States; but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the Federal courts, no reason exists why it should not be pursued in the same form as it is in the state courts. . . . The undoubted truth is that when investigating and decreeing on titles in this country we must deal with them in practice as we find them and accommodate our modes of proceeding, in a considerable degree, to the nature of the case, and to the character of the equities involved in the controversy ; so as to give effect to state legislation and state policy; not departing, however, from what legitimately belongs to the practice of a court of chancery."

The question in *Brine* v. *Insurance Co.*, 96 U. S. 627, 633, was whether a state statute which allowed to the mortgagor twelve months to redeem, after a sale under a decree of foreclosure, and to his creditor three months after that, conferred a substantial right; and it was so held, and that such right of redemption after sale was as obligatory on the Federal courts

sitting in equity as on the state courts; and that their rules of practice must be made to conform to the law of the State so far as may be necessary to give full effect to the right. The opinion of the court was delivered by Mr. Justice Miller, who said:

" It is denied that these statutes [giving the right to redeem] are of any force in cases where the decree of foreclosure is rendered in a court of the United States, on the ground that the equity practice of these courts is governed solely by the precedents of the English Chancery Court as they existed prior to the Declaration of Independence, and by such rules of practice as have been established by the Supreme Court of the United States, or adopted by the Circuit Courts for their own guidance. And treating all the proceedings subsequent to a decree which are necessary for its enforcement as matter of practice, and as belonging solely to the course of procedure in courts of equity, it is said that not only do the manner of conducting the sale under a decree of foreclosure, and all the incidents of such a sale, come within the rules of practice of the court, but that the effects of such a sale on the rights acquired by the purchaser and those of the mortgagor and his subsequent grantees are also mere matters of practice to be regulated by the rules of the court, as found in the sources we have mentioned.

" On the other hand, it is said that the effect of the sale and conveyance made by the commissioner is to transfer the title of real estate from one person to another, and that all the means by which the title to real property is transferred, whether by deed, by will or by judicial proceedings, are subject to, and may be governed by, the legislative will of the State in which it lies, except where the law of the State on that subject impairs the obligation of a contract. And that all the laws of a State existing at the time a mortgage or any other contract is made, which affect the rights of the parties to the contract, enter into and become a part of it, and are obligatory on all courts which assume to give remedy on such contracts.

" We are of opinion that the propositions last mentioned

are sound; and if they are in conflict with the general doctrine of the exemption from state control of the chancery practice of the Federal courts, as regards mere modes of procedure, they are of paramount force, and the latter must to that extent give way. It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute, which is clearly within the legislative power, come in conflict with mere forms and modes of procedure in the courts, the latter must give way, and adapt themselves to the forms necessary to give effect to such rights. The flexibility of chancery methods, by which it moulds its decrees so as to give appropriate relief in all cases within its jurisdiction, enables it to do this without violence to principle. If one or the other must give way, good sense unhesitatingly requires that justice and positive rights, founded both on valid statutes and valid contracts, should not be sacrificed to mere questions of mode and form." See also to the same effect the case of *Holland* v. *Challen*, 110 U. S. 15.

Of course, these views are not applicable to cases arising out of interstate commerce, where the policy to be enforced is Federal. Nor has it been found necessary to consider whether the agreement between these parties was, as a contract of life insurance, void because the defendant had not complied with the statutes of Minnesota.

The decree of the Circuit Court of Appeals, affirming that of the Circuit Court, is accordingly

*Affirmed.*