**SACHS et al. v. GINSBERG.**
No. 8167.

Circuit Court of Appeals, Fifth Circuit.
Dec. 15, 1936.

Wm. Andress, Jr., of Dallas, Tex., for appellants.

Stanley Boykin, of Fort Worth, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is an appeal from a judgment for appellee in an action under article 5073 of the 1925 Revised Civil Statutes of Texas, which allows recovery of twice the amount of interest, paid in usurious transactions. The sole specification of error is that the evidence does not support the finding that the money advanced was to be repaid absolutely and unconditionally, such an agreement being an essential element of a usurious contract. Pansy Oil Co. v. Federal Oil Co. (Tex.Civ.App.) 91 S.W.(2d) 453.

The trial was had before the court without a jury, and judgment was entered on the oral findings of the court. Some doubt appears as to whether or not the record will support the assignment of error, since no formal motion for judgment was made in the lower court [Greenway v. United States (C.C.A.) 67 F.(2d) 738], no request for findings of fact and conclusions of law presented, and no exception reserved to a ruling thereon. Fleischmann Const. Co. v. United States, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624. We pass these questions and consider the case on its merits, all conflicts in the evidence being resolved in favor of appellee. McKinley Creek Mining Co. v. Alaska United Mining Co., 183 U.S. 563, 22 S. Ct. 84, 46 L.Ed. 331.

On February 9, 1935, appellee contracted with the Shoe Market, Incorporated, of Oklahoma City, to purchase its stock of merchandise and fixtures for a consideration of $12,500, of which $2,000 was to be paid by the transfer of an equity in a house and lot in Fort Worth, Tex., the remaining $10,500 to be paid in cash. Appellee immediately went into possession of the business and continued its operation. Having only $3,000 in cash, he applied to appellants for a loan of $7,500 on the security of the store. Appellants went to Oklahoma City, checked over the stock, approved an inventory value of $30,000, satisfied themselves that the security would be adequate, and agreed to make the loan for a bonus of $3,000, which sum added to the $7,500 to be advanced made $10,500, all of which was to be repaid by December 31, 1935; any balance remaining unpaid after August 11, 1935, to bear interest at the rate of 6 per cent. per annum. However, in carrying out this agreement, they required the property to be conveyed to them for a recited consideration of $12,500, and executed a contract with appellee for sale of the same to him for $15,500. In consummation of this contract, appellee conveyed the house and lot in Fort Worth to the original owners of the store, and paid $3,000 cash to appellants. The contract did not contain any express promise on the part of appellee to pay the remaining $10,500, due on the purchase from appellants, but nevertheless it did provide that the proceeds of all sales made in the store should be deposited in a named bank to the credit of appellants, and that one-half of the amount so deposited should be theirs unconditionally. They further required that the remaining one-half should be available, one-fourth for operating expenses (of which appellee was allowed to draw $250 per month as compensation) and one-fourth for the purchase of new merchandise. Appropriate language in the contract gave appellants the power to terminate the rights of appellee if any of the provisions of the contract were vio-

lated by him. Consequently, if appellee had elected not to proceed with the contract immediately after its execution, his loss would have been $5,000. If he had undertaken to complete the purchase, and been unable to perform his contract within the time allowed, he would have lost the $5,000 and all payments made through the deposit arrangement, less any possible difference in the value of his services in operating the store and the amount he was permitted to draw out of the proceeds as his compensation. At the stipulated rate of $250 per month, this could not have exceeded $2,500, even if appellee's services had been worthless. However, the record warrants the assumption that the services were worth $250 per month. Thus, under the contract, in order to escape payment, appellee was bound to sustain a loss which would begin with $5,000 and would be substantially increased every day that he delayed its termination; and, in the event of his inability to pay, appellants were given the power to force this loss upon him.

It is readily seen that the omission from the contract of the promise to pay was intentional, and that, in its stead, a situation was created whereby payment was assured by an arrangement under which it became just as certain as if the promise had been included. The question presented here is whether or not the omission from the contract of the promise to pay converted what was understood by the parties thereto to be a loan into a joint venture or class of transaction other than a loan within the meaning of the usury statute.

 It was the duty of the trial court to look beyond the form of the contract and to determine the exact nature of the transaction, and, if found to be a loan and usurious, to bring it within the terms of the statute, no matter how righteous the cloak of formality which was used to conceal its real character. Scott v. Lloyd, 9 Pet. 418, 9 L.Ed. 178; Andrews v. Pond, 13 Pet. 65, 10 L.Ed. 61; Missouri, Kansas, etc., Trust Co. v. Krumseig, 172 U.S. 351, 19 S.Ct. 179, 43 L.Ed. 474.

The facts in this case clearly demonstrate that appellants contemplated the repayment of the $7,500 advanced, and the $3,000 charged thereon, as a loan. In lieu of a promise to pay, and as a substitute therefor, they required appellee to place himself in a position where failure to repay would be disastrous to him and the only advantage to him would come from the full performance of the contract. In fact, the situation created by the appellants was such that an express promise to pay would have been a useless gesture of no additional value to appellants. The contract adopted the fiction of an option to buy, when, in fact, appellee had already bought. It made and preserved adequate guaranties of payment of the amount advanced. There being no need for inclusion of a promise to pay in the contract, it was omitted. The simulated purchase by appellants and the asserted option of appellee to buy were but colorable devices to cover the usurious charge made in the actual transaction. The court properly looked beyond these devices to find the real transaction as it actually took place, and to impose the penalty provided by statute. The transaction was clearly a loan, and usurious within the meaning of the statute. Scott v. Lloyd, supra; Bank of United States v. Owens, 2 Pet. 527, 7 L.Ed. 508; Andrews v. Pond supra; Missouri, K. & T. Trust Co. v. Krumseig, supra.

Affirmed.