JAMES BROWN et al. *v.* JOHN B. NEVITT et al.

Where a prior mortgagee files a bill to foreclose a mortgage, a junior mortgagee of the same property has a right to be made a party defendant to the proceeding, in order that he might have an opportunity to pay off the prior incumbrance, and attend to the account to be taken to satisfy said prior claim, to see that it is correctly taken : — *Held*, that such a junior incumbrancer cannot be made a party for any other purpose than to attend to taking the account, unless he offers to redeem.

Brown et al. *v.* Nevitt et al.

A junior incumbrancer in such a case is not in an attitude to render it necessary that an account of his claim should be taken; for, unless he offers to redeem, he is not entitled to demand a foreclosure of his mortgage.

Where the consideration of a contract or obligation entered into was bank credits, whether loaned or transferred or sold, and the credits are shown to have been greatly depreciated below the nominal value at which they were received at the time, which fact was known to all the parties: — *Held*, that this court has repeatedly declared such contracts to be usurious. 8 S. & M. 533; Ib. 543; 3 Ib. 289; 12 Ib. 286; Ib. 495; 14 Ib. 18, cited and confirmed.

A contract or an agreement must stand or fall by the law of the place where it was made; and the laws of another State cannot render valid a contract made here, and sought to be enforced here, but which is prohibited by our laws.

A contract once tainted with usury, is not changed in its character by the use the party makes of the depreciated funds received; and a party will not be aided in a court of justice to reap the fruits of his illegal contract, however harshly the loss may fall upon him. The rule in such cases is, *potior est conditio defendentis.*

Where a transaction is one entire contract, and it is usurious as to a part of it, it is illegal as to the whole: — *Held*, that no interest can be recovered upon any part of the contract.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

On the 19th day of May, 1848, James Brown filed his bill against the defendant, Nevitt, to foreclose a mortgage on an undivided half of a plantation and negroes in Adams county. The debt sought to be collected is described in the bill as two promissory notes made by the defendant Nevitt, dated 12th May, 1841, each for the sum of ten thousand eight hundred and thirty-three and one third dollars, payable and negotiable, one of them two years after date, and the other three years after date, at the Bank of Louisiana, in the city of New Orleans, with interest at eight per cent. per annum from date. The proviso of the mortgage is, that if said defendant Nevitt should pay to complainant the just and full sum of thirty-three thousand five hundred dollars, with interest, as mentioned in three promissory notes and two drafts, as follows, to wit, one for the sum of four thousand eight hundred and thirty-three and one third dollars, and two others for ten thousand eight hundred and

thirty-three and one third each, all in favor of James Brown, of even date with the mortgage (12th May 1841), the first note payable in one year, the second in two years, and the third in three years from date, and bearing interest at eight per cent.; and also two drafts drawn by said John B. Nevitt on Samuel Nicholson, one for the sum of three thousand six hundred and fifty dollars, and the other for two thousand three hundred and fifty dollars, dated as aforesaid, and both payable 1st January, 1842; and also any further sums of money which said Brown may advance to or on account of said John B. Nevitt, then the said deed of mortgage to be void. William Robertson, trustee, holding a mortgage upon the other undivided half of said property, is made party defendant. On the first note, several credits are entered, being proceeds of cotton and payments in lumber. Robertson answers, stating his mortgage, that he has filed a bill to foreclose, and prays to be protected in his rights.

To June term, 1848, Nevitt filed a demurrer to the bill, which was overruled at the same term, and sixty days given to answer.

In September, 1848, Nevitt filed his answer, in which he admits the making the notes and mortgage, denies the allegation of the bill that there remains due twenty-three thousand eight hundred and seventy-nine dollars and sixty cents for balance of principal and interest. Has made payments amounting to twenty-one thousand eight hundred and twenty-six dollars and thirty cents. In making said payments, defendant directed them to be applied to the extinguishment of the drafts drawn by defendant on Nicholson for six thousand dollars, next to the note for four thousand eight hundred and thirty-three and one third dollars, and any excess remaining, to the note for ten thousand eight hundred and thirty-three and one third dollars, due two years after date; charges, that before making of the notes and mortgage, which transaction was negotiated through Samuel Nicholson, to wit, on or about the 12th of May, 1841, it was unlawfully agreed between complainants through his agent, Samuel Nicholson, acting under the direction of complainant, that complainant should lend and advance to this defendant the sum of

thirty-two thousand five hundred dollars, in manner following that is to say, the sum of ten thousand dollars, part thereof by a credit to be given to this defendant for this sum upon the books of the Planters Bank at Natchez; the sum of sixteen thousand five hundred dollars as another part thereof, by a credit to be given this defendant for that sum upon the books of the Commercial Bank of Rodney; and the sum of six thousand dollars, the residue thereof, should be advanced in cash on the 1st of January then next; the defendant to pay thirty-two thousand five hundred dollars in three payments, of one, two, and three years, with eight per cent. per annum interest, from the time of lending and advancing said sum and credits until paid, in the lawful money of the United States. The defendant agreed to make the three notes as above, one for four thousand eight hundred and thirty-three and one fifth dollars, one for ten thousand eight hundred and thirty-three and one third dollars, and one other for ten thousand eight hundred and thirty-three and one fifth dollars, drawing eight per cent. interest from date, and his two drafts, one for three thousand six hundred and fifty dollars, the other for two thousand three hundred and fifty, dated May 12, 1841, and due 1st January, 1842, (there is no interest in the drafts,) and also to make a mortgage to secure payment of the same. States that the agreement was executed, and that defendant made the notes and drafts, and complainant caused a credit to be entered upon the books of the Planters Bank for ten thousand dollars, and upon the books of the Commercial Branch of Rodney, in favor of defendant, for sixteen thousand five hundred dollars, and also paid the sum of six thousand dollars on the 1st of January, 1842, for and on account of defendant; that although the loan and advance was for the nominal amount of thirty-two thousand five hundred dollars, yet it was understood between complainant and defendant that the credits with the banks aforesaid were, at the time they were entered upon the books of said banks, respectively at a depreciation of twenty or twenty-five per cent. below specie; and said credits were so entered as a loan and advance of so much money, as the defendant believes, to enable the complain-

ant to reserve a greater rate of interest than was allowed by the laws of the land, by reason of which said notes are illegal and void.

At June term, 1849, an order was entered upon petition of Bacon, Symington & Robins, (junior incumbrancers,) that complainant do make them parties defendant to said cause.

Bacon, Symington & Robins had filed an answer and cross-bill before they were made defendants.

At June term, 1849, the complainant moved for leave to amend his bill *nunc pro tunc*, making them parties. This was overruled. He then moved to take their answer and cross-bill from the file, as having been filèd before they were parties. This was sustained.

The bill was .then amended, making Bacon, Symington & Robins parties by amended bill filed at June term, 1849.

Bacon, Symington & Robins filed their answer, claiming a mortgage of minor date, made by J. B. Nevitt upon an undivided half of the same property ; state that the Brown debt, the Commercial Bank debt, and the debt due respondents, are in the aggregate more than the whole property will pay ; that Nevitt is in possession ; prays that the answer be made a cross-bill, and a receiver be appointed.

At December term a demurrer by Nevitt was sustained to so much of the above answer as made it a cross-bill, and leave given to amend it by some verbal corrections as an answer.

At June term, 1850, Nevitt filed a demurrer to the amended bill, which made Bacon et al. parties, and said demurrer was allowed and the bill dismissed as to J. B. Nevitt, and an order of reference made to ascertain amount due from Nevitt to Brown.

Bacon et al. then filed a petition that an account be taken of what is due by Nevitt to them, on the ground that they have a right to redeem Brown's mortgage. The prayer of the petition was refused.

The chancellor rendered a decree in favor of Nevitt, and Brown and others appealed to this court.

*H. S. Eustis* for appellant Brown.

1. The usury laws of this State have no application. This is a Louisiana contract, and neither the pleadings nor the proofs show any defence on the ground of usury, under the laws of Louisiana.

The testimony shows, that the contract was closed by Nevitt's going to New Orleans, and after several propositions, the final assent was obtained from S. Nicholson to the present contract, at his place of business in the city of New Orleans. Further, the notes are made payable at the Bank of Louisiana.

A note dated in this State, payable in New Orleans, is governed by the usury laws of Louisiana. *Martin* v. *Martin,* 1 S. & M. 176; *Rabb* v. *Halsey,* 11 Ib. 140; *Bank of England* v. *Tarleton,* 1 Cushm. 173.

"When the parties do not reside in the place where the contract is made, and it is effected by means of agents or letters, the place in which the final assent is given by the party to whom the proposition was made, is that in which the contract is considered to have been made." Burge on Suretyship, 75, 78; *Andrews* v. *Pond,* 13 Peters, 56, 77; Story's Confl. of Laws, 50 et seq.

The pleadings nowhere contend that any part of the transaction violates any law of the State of Louisiana; and there is no proof in the record, what is the law of Louisiana, which would bear on the case, even if (which we deny) upon the proof the transaction had been a loan. We have a statute, Hutch. Code, 868, which makes the printed volume of the laws of the several States competent evidence, but it does not appear that any such evidence was offered in this case. And there was not, in fact, because the pleadings made no point on the laws of Louisiana.

2. If our usury laws have any application to the case, the appellant has nothing to fear from them. A question of fact is presented by this record. Whether this was a sale, *bonâ fide,* of depreciated paper, to Nevitt, at his own solicitation, and upon an agreed price, or was it a loan of money, with a contrivance to cover usury? For the determination of this question, the very best testimony is furnished by the written correspondence of the parties prior to the transaction. We can add noth-

ing to the strength and clearness of Nevitt's own letters. He comes to the Browns as a purchaser; they exhibit no anxiety to sell; they have but one price, and he at length determines to give it, in consideration of the long time allowed for payment. If the Browns are ever paid the full amount of this decree and interest, they will then have received no more than they were entitled to receive from the banks. Nevitt makes himself paymaster for the banks, for so much of the debt due by them to the Browns. As that debt was not usurious, the assumpsit by Nevitt is not usurious. *Coalter* v. *Robinson*, 14 S. & M. 18; *American Life and Trust Co.* v. *Dry Dock Company*, 3 Comstock.

In his answer he admits that he got what he contracted for; that "complainant caused a credit to be entered upon the books of the banks," &c.

Three things are necessary to constitute usury; a loan, taking more than lawful interest, and a corrupt agreement. *Bank of Utica* v. *Wager*, 2 Cow. 712; *Bank of Utica* v. *Smalley*, Ib. 770.

A sale of credit, or guarantee of commission beyond seven per cent. is not usury, because the transaction is unconnected with a loan of money.

In *Ketchum* v. *Barber*, 4 Hill, 256, Bronson, J., is misrepresented. *More* v. *Howland*, 4 Denio, 264.

Selling cows on a contract to return double the same number and description at the end of four years, is not usurious. *Spencer* v. *Tilden*, 5 Cow. 144. So of sheep. *Holmes* v. *Whetmore*, Ib. 149; *Northampton Bank* v. *Allen*, 10 Mass. 284; *Churchill* v. *Sutee*, 4 Ib. 156; *Bridge* v. *Hubbard*, 15 Ib. 961; *Portland Bank* v. *Storer*, 7 Ib. 433.

Where the bank treated the note, when discounted, as having been discounted on the day of its date instead of a subsequent day on which the proceeds were carried to credit of the borrower, not usury. 3 How. U. S. R. 62; *Som* v. *Waller*, 1 Hill, 227; *Knox* v. *Goodwin*, 25 Wend. 643; *State Bank* v. *Cowan*, 8 Leigh, 238.

An exchange of credits is a good consideration for a note. Story, Prom. Notes, § 186.

*Burwell* on the same side.

.Suppose the court should release Nevitt from this contract on the score of usury, what follows? Nevitt obtains $16,500 in specie and interest from the Bank of Port Gibson, and the value of the Planters Bank bonds or debt by the speculation of buying these debts on a credit, and then pleading usury. The fact that Nevitt used the bank debts in payment of his own, strengthens the case against him. If he had not paid the Bank of Port Gibson, he could now be compelled to pay in specie just what Brown wants him to do. Story on Contracts, § 654; 2 Kent, 460 and 461, in note; Story, Confl. of Laws, § 291.

*George S. Yerger* for Bacon et al.

*J. Winchester* for appellees.

A bond and deed of trust executed for a loan of money, the amount of which is made up in part of a preëxisting valid debt, and in part of stocks passed at a price considerably above the market value, is usurious. *Bank of Washington* v. *Arthur*, 3 Gratt. 173; 7 U. S. Dig. 475.

One covenants to assign to a bank a mortgage and bond for $13,000, payable in five years, with interest semiannually, and to guarantee its payment, and the bank agrees to transfer to him stocks nominally $6,500, but 25 per cent. below par, and to pay the balance in money. The bond and mortgages not being assigned, a new agreement is written on the same paper, and the bank transfers the stocks and pays the money, receiving two notes for $6,500 each, and agreeing to take the bond and mortgage in payment, if transferred before the notes fall due. In a suit upon the notes, held a usurious transaction. *Seymour* v. *Strong*, 4 Hill, 255.

Where a proposition was made to a bank to purchase its stock at par, when its actual market value was much less, upon the consideration of which the bank was to loan money to the purchaser, and the purchaser's notes were made and discounted in pursuance of the agreement, it was held that the sale and loan were one entire contract inseparably connected

with each other and dependent on each other, and that the transaction was usurious. *Valley Bank* v. *Stribling*, 7 Leigh, 26.

A. indorsed a promissory note payable to himself, and delivered it to his clerk to sell to B., and to conceal from him that the note was A.'s property. The clerk sold it to B. at a discount of twenty-three and one third per cent., representing it as his own, and indorsed it to B., without recourse. In a suit by B. against A., it was held that the transaction was usurious. *Ruffin* v. *Armstrong*, 2 Hawks, 411.

A requisition by the lender of the borrower, as a condition of a loan, that the borrower shall take up notes held by the lender on an insolvent man, would *per se* be usury in law; and if the securing the doubtful debt formed any part of the lender's inducement, it raises a suspicion of an agreement for more than lawful interest upon the money, but which calls for an explanation on the part of the lender. *Shober* v. *Hauser*, 4 Dev. & Batt. 91.

Where a party by a contract has secured to himself a greater rate of interest than the legal rate for the money loaned, and it was his intention so to do, the contract is usurious and void. *Rhodes* v. *Fullenwider*, 3 Ired. 415. A bank in North Carolina agreed to lend to an individual notes of a Virginia bank, which were at a depreciation in the market, below both specie and the notes of the bank of North Carolina, and the borrower was to give his note at ninety days, to be discounted by the bank, and to be paid in specie or in the notes of the bank making the loan. Held, that the note given in pursuance of this agreement was void for usury, though the borrower stated at the time, that he could make the Virginia notes answer his purpose in the payment of his debts to others. *Ehringhaus* v. *Ford*, 3 Ired. 522.

The mere sale of a chose in action, not connected with a loan, is not usurious *per se*. *Rapelye* v. *Anderson*, 4 Hill, 472.

The *bonâ fide* sale of one's credit is not usurious, though it exceed the legal rate of interest and is not connected with a loan. *Ketchum* v. *Barber*, 4 Hill, 211.

If connected with a loan and it exceed the legal rate, the excess must be for trouble and expense actually and *bonâ fide* incurred. 4 Hill, 211.

The defendant, wishing and unable to borrow money of the plaintiffs, gave his note for $770, payable in one year, and received a note for $700 on a person he was informed had cotton ready to pay it. Held usurious. *Brown* v. *Fausset*, Harp. 81.

A loan at par of bank-notes, passing at from two to five per cent. discount, unexplained by circumstances, would be usurious. *Caton* v. *Shaw*, 2 Har. & Gill, 13.

A. lends to B. $687, to be repaid on a certain day with interest; and B., in consideration of the loan and forbearance, purchases of A. sixteen shares of turnpike stock for the sum of $400, (when in truth the real price was $250,) and gives his bond for $689, together with the $400 for the stock. Held the transaction usurious, and bond void. *Rose* v. *Dickson*, 7 Johns. 196.

A contract to lend a portion of the money wanted by the borrower, on condition that he will receive stock at a price much above the market value to make up the deficiency, is usurious. *Stribling* v. *Bank of Valley*, 5 Rand. 132.

*H. T. Ellett* on the same side.

The law on the subject of usury is so familiar, that a reference to a few leading cases and principles is all that can be necessary.

A profit made or loss imposed on the necessities of the borrower, whatever form, shape, or disguise it may assume, where the treaty is for a loan, and the capital is to be returned at all events, is usurious, if above the legal rate. *Bank of United States* v. *Owen*, 2 Peters, 527, 537.

The question is, "what is the real substance of the transaction, not what is the color and form." *Lowe* v. *Waller*, 2 Dougl. 736.

Where usury is disguised under a sale of goods, the property passes to the vendee, but the excess of price over the just value, is considered a premium for the forbearance of the debt, founded on a presumed loan of so much of the purchase-money as is

Brown et al. *v.* Nevitt et al.

equivalent to the cash value of the commodity sold. This amount constitutes the loan to the borrower, and the real debt due from him to the lender. If the securities received by the former are depreciated, the difference between the nominal ând money value is so much interest for the forbearance of the debt. *Dry Dock Bank* v. *Life Insurance Company*, 3 Coms. 358, 359.

A loan of bank-notes that are under par is usurious, if more than legal interest on the actual value is reserved. *Bank of United States* v. *Owen*, 2 Peters, 527; *Gaither* v. *Bank of Georgetown*, 1 Ib. 37; *Caton* v. *Shaw*, 2 Har. & Gill. 13.

Where a proposition is made for a loan of money, and the lender advances part on condition that bank stock shall be taken for the residue, at a price beyond its value in market, it is usurious. *Stribling* v. *Bank of Valley*, 5 Rand. 132.

So if the whole loan is in bank stock. *Putnam* v. *Archer*, 12 S. & M. 286.

A promissory note given for bank notes at a discount, and given for the nominal amount of such bank-notes, the measure of damages is the value of the bank-notes at the date of the note. *Scott* v. *Hamblin*, 3 S. & M. 285; *Walker* v. *Meek*, 12 Ib. 496.

Where a bank discounting a note, pays out the depreciated notes of other banks, the contract is usurious, and only the cash value of the notes paid out can be recovered. 1 S. & M. 642; 3 Ib. 285; 8 Ib. 533; Ib. 543; 12 Ib. 288. The latter case shows that there is no difference between a bank and an individual in such a transaction.

Mr. Justice HANDY delivered the opinion of the court.

This was a bill filed in the southern district chancery court by James Brown, appellant, against John B. Nevitt, to foreclose a mortgage of real and personal property, executed by Nevitt to Brown, to secure a debt amounting to $32,500 and interest, consisting of several notes made by Nevitt to Brown, one for the sum of $4,833.33⅓, two for the sum of $10,833.33⅓ each, all bearing interest at the rate of eight per centum per annum from their date, also two drafts drawn by Nevitt on Samuel Nicholson, agent for Brown, amounting to the sum of $6,000, all

bearing the same date of the mortgage, and being payable at future days. The bill states that the first note and the two drafts had been paid, and claims that there was due on the two notes for $10,833.33⅓, a balance of principal and interest of about $23,879.60, and seeks a foreclosure.

The answer of Nevitt denies his indebtedness to the amount claimed in the bill, and alleges that the contract sought to be enforced against him is usurious, unlawful, and against the form of the statute in such case made and provided, and was made under the following circumstances: That Nevitt agreed with Nicholson, agent of Brown, that Brown should lend and advance to him the sum of $32,500, on a credit of one, two, and three years, in equal annual instalments, to be secured by mortgage and to bear interest at the rate of eight per cent. per annum from the date of the transaction; that $10,000 of this amount was to be advanced by Brown, by causing a credit for that sum to be entered for Nevitt on the books of the Planters Bank at Natchez, and the sum of $16,500 of the money advanced was to be by a credit to that amount to be entered for Nevitt on the books of the Commercial Bank of Rodney; and the residue of said amount, $6,000, was to be advanced in cash to Nevitt on the 1st of January thereafter; that the credits were accordingly given on the books of the banks, and the sum of $6,000 was paid in cash, but that although the credits received on the books of the banks were at their nominal amounts, they were, at the time they were received, at a depreciation of twenty or twenty-five per cent. below lawful money; that the notes and mortgage were executed for the credits so given, in part as for a loan and advance of so much money by Brown to Nevitt, and with the intention to require a greater rate of interest than was allowed by our laws. The answer further claims payments on the mortgage debt to the amount of $21,826.30.

During the progress of the case Bacon, Symington & Robins filed their petition claiming to be made defendants, and they were accordingly made parties by an amended bill filed by the complainant. They answered that, subsequent to the execution of the complainant's mortgage, Nevitt executed a mortgage to the Planters Bank, for an undivided moiety of all the

property embraced in the mortgage to complainant, to secure three notes made by him to that bank, which notes and mortgage were in the year 1842 duly assigned and delivered to these respondents; that this mortgage as well as that of the complainant had become forfeited, and that Nevitt was in the possession of the property and receiving the proceeds of the crops; that the property embraced in the complainant's mortgage was not more than sufficient to satisfy the same, and that the crops raised by means of the property, pending the suit, are required to pay these respondents' claim, without which little or nothing would be left to pay it, after satisfying complainant's prior claim.    They pray that their answer may be taken as a cross-bill, and answered by complainant and Nevitt; that a receiver be appointed to take possession of the mortgaged property, and that the crops and annual proceeds may be applied to the payment of the mortgage debts, and the mortgaged property sold, " and the proceeds appropriated according to law."

To this cross-bill, Nevitt demurred, and by the consent of Bacon, Symington & Robins, the demurrer was sustained to it as a cross-bill, but it was retained as an answer.   Nevitt also demurred to the amended bill of the complainant by which Bacon, Symington & Robins were made parties in virtue of their junior mortgage.   This demurrer was also sustained, and the amended bill dismissed as to Nevitt, but retained as to Bacon, Symington & Robins.   They afterwards filed their petition praying an account to be taken of the amount due them by Nevitt under their mortgage.   This application was denied, and an appeal was thereupon taken by them to the superior court of chancery, when the order was affirmed, and thereupon this appeal in part is prosecuted.

On the final hearing against Nevitt, the vice-chancellor decreed the payment of the full amount claimed by Brown against Nevitt, and a foreclosure of the mortgage.   Nevitt appealed to the superior court of chancery, and a decree was there rendered declaring the complainant's claim illegal and usurious, reversing the vice-chancellor's decree, and directing a new account to be taken, charging Nevitt with the actual cash value of the bank credits at the time of the transaction, and with the acceptance

for six thousand dollars, allowing no interest, but only the principal sum due, and crediting Nevitt with the payments he had made in the transactions. From this decree Brown also prosecutes this appeal.

We will first consider the appeal of Bacon, Symington & Robins.

It is first objected in their behalf, that the demurrer to their cross-bill was sustained. But this was done by their consent, and they cannot be heard in this court to object to it. Independent of this, the cross-bill ought not to have been maintained. They certainly had a right to be made parties defendant to the bill of the complainant. As junior incumbrancers, in right of their junior mortgage, they should have been made parties, in order that they might have an opportunity to pay off the complainant's prior incumbrance, and to attend to the account to be taken of the complainant's claim, and see that it was correctly taken. Story, Eq. Pl. § 193, 194; 3 Johns. Ch. R. 461; 1 Paige, 286. These rights were secured in their being made defendants to the suit. But they make no offer to redeem, and as defendants, they were entirely competent to attend to the taking the account of the complainant's claim. They were not entitled to be made parties for any other purpose, and could not be permitted to interpose, without offering to redeem, and claim a foreclosure of their mortgage under cover of the bill of the complainant to foreclose his prior mortgage, a proceeding not shown to be necessary by any equitable considerations appearing by the cross-bill, one which might produce a collateral litigation between them and Nevitt, with which the complainant had no concern, and tending to hinder and delay the settlement of the complainant's rights, and to embarrass the litigation as to the defendant.

The next objection on their part is, that the court refused their application to have an account taken of the amount due on their mortgage. This course was undoubtedly proper, for reasons above stated. These defendants were not in an attitude to render it necessary that an account of their claim should be taken. They had not offered to redeem, and were not entitled to demand a foreclosure of their mortgage under the bill to

foreclose the prior mortgage of the complainant. Their cross-bill had been dismissed with their consent, and the suit stood as a controversy between Brown and Nevitt alone, by which the rights of these defendants were not affected. It would have been wholly useless, for any proper purpose of the suit, to have an account taken of their claim, and the court below acted properly in refusing the application.

But the principal controversy here arises upon the appeal of Brown, and the question for determination upon it is, whether the transaction between Brown and Nevitt in relation to the bank credits given to the latter is usurious. The main features of the transaction appear to be as follows : —

In the spring of the year 1841, Nevitt being indebted to the Commercial Bank of Rodney, and the Planters Bank at Natchez, applied to the agents of Brown to obtain funds that would pay debts to those banks. Negotiations for that purpose were thereupon opened between the parties. Nevitt addressed a letter to Nicholson, an agent of Brown at New Orleans, dated 23d March, 1841, referring to an application made by him shortly before that to Marshall, another agent at Natchez, in which letter he states his object thus : " I wish to pay $10,000 of the debt due you (meaning Brown), by the Bank of Rodney, in one and two years. I wish to buy $15,000 or $18,000 of the Planters Bank bonds at such rate and favor as we may agree on, payable in one, two, and three years ; and lastly, I wish permission to draw on you at twelve months date for five thousand dollars, for which I will give a bond to consign to your house cotton crops," &c., the whole to be satisfactorily secured by mortgage, &c. To this, Nicholson replied under date 27th March, 1841, stating that he did not exactly understand the proposition, and adding, " Do I understand you now to propose that you will agree to pay $10,000 of the debt due us by the Rodney Bank, and $15,000 by the Planters Bank, payable in one, two, and three years, bearing interest the same as the banks have agreed to pay us, say 8 per cent. per annum, and the privilege of drawing on us besides for $5,000 ? " and the proposition as to shipping crops and executing mortgage above stated. He further said : " As our

claims on the banks are in the shape of sterling bonds, it might be necessary to have their consent to such an arrangement." Nevitt replied to this on the 5th of April, 1841, restating his proposition as follows: " I wish to pay for the Commercial Bank of Rodney, ten thousand dollars of their liabilities to you, and get your receipt for the same; secondly, I wish to buy fifteen thousand dollars of Planters Bank bonds drawn in favor of your house; and thirdly, I wish to have your permission to draw on you at twelve months date for five thousand dollars, the whole payable in one, two, and three years, at such rate as we might agree on," to be secured by consignment of crops and mortgage. He adds, " In your letter, you put the Planters Bank bonds at par; you are aware, I suppose, they are selling now at a considerable discount, and much apprehension entertained of their future payment. I have consulted our mutual friend, L. R. Marshall, and made a proposition which he wished me to submit to you, to reduce the rates of interest on the bonds to half the amount specified, or I will take your offer for the Rodney Bank amount, and change the amount of Planters Bank bonds to ten thousand dollars, and draw at twelve months for ten thousand dollars, the whole secured as before mentioned, payable out of the first proceeds (of crops) in the annual instalments, bearing interest at the rate you propose, say eight per cent. per annum. I make the change as I can buy the Planters Bank bonds greatly below par." He further stated that he had consulted the banks, and that they were willing to the arrangement.

On the 16th of April, 1841, Nicholson replied to this, stating that he had been advised by Mr. Marshall, that " all would be made satisfactory." He says, " I believe we understand each other now fully, with the exception of the amount which you wish to draw on me at twelve months. I must decline coming under acceptance for the present for over $5,000, and you may either make the amount of the Planters Bank $10,000, or $15,000, as you may prefer. So the matter stands thus, if I understand it, that is, first, you assume $10,000 of the Rodney Bank debt due us; second, you purchase $10,000, or $15,000, as you may prefer, of the Planters' Bank bonds at par; third,

you draw on me at twelve months for $5,000," &c. He stated that he had written to Mr. Marshall to close the business with him, &c.

On the 4th of May, 1841, Nicholson wrote to Marshall, stating that Nevitt had been at New Orleans, and had made several propositions, which he had declined, and especially that he had tried to be allowed to draw for $10,000, which was positively declined, and he refused to vary his original proposition. He says, "the business is clearly understood between us thus: $15,000 of the Rodney Bank, $10,000 of the Planters Bank, $5,000 to be drawn for, falling due not sooner than January next, the bank debt to be taken at par, and the whole to bear interest at the rate of eight per cent. per annum, and payable in one, two, and three years equal instalments;" secured, &c.

On the 15th of May, 1841, Mr. Marshall wrote to Mr. Nicholson from Natchez, stating that he had received the letter of the 4th of May, and a previous one, and had closed the business with Nevitt, by taking his notes at one, two, and three years respectively, for the aggregate sum of $26,500, payable at the Bank of Louisiana in New Orleans, to secure which, and an acceptance in his favor by Brown for $6,000, he had executed a mortgage as agreed on, the whole making $32,500, thus: " Planters Bank indebtedness $10,000, Rodney Bank indebtedness $16,500, and acceptance $6,000."

The deposition of Mr. Marshall shows, that the transaction was considered as a transfer of the debts due by these banks to Brown for the respective amounts mentioned to Nevitt; that the claims of Brown against these banks were in sterling bonds, some of which witness had in his possession at the time to the amount of $10,000; that these bonds were worth from four to ten per cent. more than the amount mentioned on their face, for difference of exchange; that none of these bonds were transferred to Nevitt, but the transaction between him and Brown was by receipts or checks, drawn by Brown on the banks to the amount for which Nevitt received credit with the banks, and which were used by him in paying his debts to the banks; that the witness passed the sterling bond which he had in his possession at the time of this transaction, amounting to about

$10,000, and belonging to Brown, to the credit of Brown with the Planters Bank, on which he had the benefit of the difference of exchange thereon of four to ten per cent. He further states, that Nicholson, in some of his letters to him, speaks of the transaction as a purchase by Nevitt of so much of his claims against the banks, and in some of them he speaks of it that Nevitt was to pay Brown so much of the debts due him by the banks; and that both these banks were in a state of suspension of specie payments, and that their bonds, above spoken of, would not have sold for specie at par in the market, at the time. In a letter from Brown to Nevitt, dated 26th of March, 1842, he speaks of the failure of Nevitt to ship cotton to meet his engagements, " in accordance with the agreement at the time the loan was made."

It is further shown, that the account of Nevitt with the Rodney Bank was credited on the books with the sum of $16,500, on account of a check for that amount drawn by Nicholson for Brown, and that Brown was charged with the same amount at the same time, both entries being made on the general account of the parties concerned; that Nevitt was credited on the books of the Planters' Bank with a check for $10,000, drawn in the same way; that the same amount was charged to the account of Brown on the books; that Brown received a credit on the books of Planters Bank bonds for $10,000, and a premium of 8¾ per cent., amounting in the whole to $10,874.59. Nevitt received credit for $10,000, and Brown had the benefit of the premium on the sterling bond. These banks were largely indebted to Brown at the time, by sterling bonds or otherwise, on general account on their books; that the issues and bonds of the Planters Bank were at a depreciation of twenty-eight per cent. below specie, and that the paper and issues of the Rodney Bank were at a depreciation of from twenty to twenty-five per cent. below specie at the time.

The principal point of controversy between these parties seems to be, whether the transaction, as to the bank credits, is to be regarded as a sale, or a loan, by Brown to Nevitt. It clearly appears that Nevitt's object was to procure funds that would pay his debts to the banks. He proposed to do so by

obtaining Brown's receipt to the Rodney Bank upon the debt due him by that bank, for a specified sum, to be passed to Nevitt's credit with that bank, and to purchase a certain amount of the bonds of the Planters Bank, to be used to his credit with that bank. As to the former bank, the matter was concluded substantially as proposed; but there can be no pretence that there was a sale of the Planters Bank bonds. On the contrary, the consideration received by Nevitt was passed in the same manner with both the banks, and consisted of a credit given on the books of each of them by means of the receipts or checks given upon them respectively in favor of Nevitt. It was a transfer to Nevitt of so much of the indebtedness of the banks to Brown, and for this consideration he executed the notes. It is not clear from the testimony, whether the transaction was in form a loan or a sale, and it seems to have been regarded indifferently in that respect by the parties. The circumstances attending it characterize it rather as a loan than a sale. But its character in substance is fixed by the actual value received under it by Nevitt, and, subjected to this test, there can be no doubt that the consideration was bank credits; and whether loaned or transferred or sold, it makes no substantial difference. Those credits are shown to have been greatly depreciated below the nominal value at which they were received by Nevitt at the time, that this was known to the parties, and that the notes and mortgage were executed as for the nominal value of the credits. It is shown, that if Nevitt had received par funds, or even the bonds of the bank, they would have been much more valuable to him in his settlements with the banks. He urged the depreciation of the bank bonds which he desired to purchase as a reason why he should obtain them upon just terms, and at their real value. But the agent of Brown insisted throughout, that the credits should be taken at par, and although Nevitt proposed to purchase the Planters Bank bonds to the nominal amount of $10,000, and the agent managing the transaction in behalf of Brown had such a bond at the time, yet that was not transferred to Nevitt, it being worth with the bank $10,874, but was passed to the credit of Brown with the bank to that amount, Nevitt receiving credit for only $10,000 with the bank.

It thus clearly appears that the consideration advanced by Brown for the notes and mortgage was depreciated bank credits, known at the time not to be of the value at which they were loaned or sold; and under the repeated decisions of this court, the contract is usurious. If a loan, it is usurious. *Bondevant* v. *Commercial Bank of Natchez*, 8 S. & M. 533; *Cook* v. *Bank of Lexington*, Ib. 543; *Coulter & Richards* v. *Robertson*, 14 Ib. 18. So if it is a sale. *Scott* v. *Hamblen*, 3 Ib. 289; *Archer* v. *Putnam*, 12 Ib. 286; *Walker* v. *Meek*, Ib. 495.

It is insisted in behalf of the appellant, that as these notes were made payable in Louisiana, they are to be governed by the law of that State; and as it is not shown that the contract was usurious by the law of that State, that it cannot be held to be usurious under our laws. This argument would have much force if the objection to this transaction was merely that a rate of interest not permitted by our laws, but allowable by the laws of Louisiana, was claimed or charged *bonâ fide*, and not with the view of evading our laws upon the subject; for in such a case, the law of the place of performance of the contract would govern it. But a much more serious objection is raised to this contract. The usury is alleged to consist, not in the stipulation for a rate of interest upon a legal loan not allowed by our laws, though legal in the State of Louisiana, but in loaning or selling depreciated bank securities as if they were worth their nominal value, by means of which an illegal rate of interest and a usurious profit upon the real value loaned or sold would be realized. The objection is, that the consideration of the contract is illegal, because the appellant thereby reserved, as a component part of the principal sum intended to be secured, a usurious rate of interest upon the sum advanced, this being inherent in the transaction, and necessarily governed by the laws of this State, where it was actually done. Such a transaction is held to be prohibited by our laws, as is above shown; and it cannot stand on the same principles with a *bonâ fide* agreement made in one place, to be executed in another. We cannot recognize the laws of Louisiana as rendering valid a contract made here and sought to be enforced here, which is prohibited by our laws. The rule in such cases is, that the

agreement must stand or fall by the law of the place where it was made. *Andrews* v. *Pond et al.*, 13 Peters, 65; Story, Confl. Laws, 203.

Here the defendant alleges that a usurious interest and profit were intended to be secured to the appellant, by means of the advance of bank credits to the amount of $26,500, as at par, when they were at a depreciation of from twenty to thirty per cent., retaining upon the nominal amount interest at the rate of eight per cent. per annum from the date. And these allegations are sustained by the evidence. It is shown that the appellant's agent, who conducted the negotiation, was well aware of the depreciation of the bank funds, and of Nevitt's great desire to procure them; that he would not transfer the sterling bonds, which were somewhat more valuable than the general bank credits, and were the kind of funds which he knew that Nevitt especially desired to purchase, and that he insisted that the bank credits should be received by Nevitt at par; that all the efforts of Nevitt to obtain the funds and advances on better terms were unavailing; that he had to come to Nicholson's terms, take a smaller advance of acceptances than he desired, take the bank debt at par, and pay interest at the rate of eight per cent. upon the whole amount. These circumstances show that by the giving time of payment on the notes of Nevitt, an interest and profit were intended to be secured, contrary to the law of this State, and which cannot be carried into execution by our courts.

It is urged, in support of the legality of this contract, that the credits received by Nevitt answered the same purpose to him as so much cash, because he therewith paid his debts to the banks. If this were correct in point of fact, it would not relieve the transaction from the taint of usury, if the bank credits advanced were not worth in the market the value for which they were passed to Nevitt; for it is held that the character of the contract is not changed by the use the party makes of the depreciated funds he receives. 8 S. & M. 541; 12, Ib. 290; 5 Ired. 698.

But it cannot be said that the credit received by Nevitt with the banks was of the same value to him as the loan of par

69 *

funds would have been. The notes and issues of those banks were at a depreciation of from twenty to thirty per cent. below par funds. He had the right by law to discharge his indebtedness to them in their own notes and issues. With par funds he could have purchased in the market their issues at this depreciation, and it is clear that it would have required a much less amount of par funds to purchase their notes and paper, than the sum loaned or transferred to Nevitt. And it is, therefore, manifest that the credits advanced to him with the banks were not of the same value to him as the same amount would have been of good and lawful money.

Again. It is said that the appellant parted with his claims against the banks to the amount transferred to Nevitt, and, although they were depreciated at the time, that the issues and credit of one of them, the Rodney Bank, are now at par, and that the appellant would have had the benefit of this, had he not transferred his debt to Nevitt at his solicitation; that it would therefore be unjust to cause him to take only the value of his debt at the time of transfer, and lose all interest. This might be a very good argument against the policy of usury laws touching transactions of this character, but it cannot change the law as it is enacted, nor the exposition of it, which is so well settled in this court. If a party sees proper to deal in depreciated money and funds, he must do so at his hazard; and if he proves to have violated the law, he will not be heard in a court of justice to complain of the hardship. Upon principles of public policy, apart from the moral justice of the case as between the parties to the suit, the plaintiff will not be aided in a court of justice to reap the fruits of his illegal contract, however harshly the loss may fall upon him. The rule in such cases is, *Potior est conditio defendentis.* *Holman* v. *Johnson,* Cowp. 343.

But if the Rodney Bank credit had been at par at the time it was advanced to Nevitt, the transaction would still have been usurious, because the Planters Bank credit was depreciated, and the credits with both banks entered into and constituted parts of the contract of the notes and mortgage. And it is well settled, that where the transaction is one entire contract, and it is

usurious as to a part of it, it is illegal as to the whole; and it follows that, under our laws, no interest can be recovered upon any part of it. *Harrison* v. *Hannel*, 1 Eng. C. L. R. 780; *Jackson* v. *Packard*, 6 Wend. 415; *Fleming* v. *Mulligan*, 2 McCord, 173; 1 Ib. 350; Chitty, Cont. (6th Am. ed.) 707; 7 Pick. 40; 15 Ib. 167; *Coulter et al.* v. *Robertson*, 14 S. & M. 18.

The decree of the chancellor appears to be in conformity to these views, and it is therefore affirmed.