Nov. Term,
1858.

Mix
v.
The Madi-
son Insur-
ance Co.

chaser of the land makes a payment, the law will apply it to the judgment debt, in exoneration of the land. *Gwinn* v. *Whitaker*, 1 Har. and J. 754. Again, when a judgment-creditor has a right upon two funds, and another upon one only of them, the former may be compelled to apply first to the fund which cannot be reached by the second judgment. Story's Eq. Juris. § 633. "When there is a lien upon different parcels of land for the payment of the same debt, and some of the lands still belong to the person who in equity owes or ought to pay the debt, and other parcels of the land have been transferred by him to third persons, his part of the land, as between himself and them, shall be primarily chargeable with the debt." *Id.* § 1233.—*Cohen* v. *Hannegan*, 2 Ind. R. 379.—*Russell* v. *Houston*, 5 *id.* 180.

Fraud should be charged in the most direct and unmistakable manner. Otherwise, the rule, *secundum allegata et probata* does not hold good. See 2 Chit. Pl. 679 to 710, 12th ed., and the standard forms *passim,* and compare with the pleadings in this case. "As it is an intendment of law that a person is innocent of fraud and every imputation affecting his reputation, the party insisting upon the contrary must state it in his pleadings. Chit. Pl. 221, 12th ed. Where fraud exists, it must, from its nature, be known to the party guilty of it. The words "of all which the defendant then and there had notice," have acquired a *quasi* technical significance, and are used with reference to some fact peculiarly within the knowledge of the party pleading. See a form in 2 Chit. Pl. 118, where the words refer only to the facts of presentment and non-payment. See, also, the same, 328.

---

## Mix and Others *v.* The Madison Insurance Company.

Negotiable paper may be sold for less than its face, and the purchaser can recover its whole amount from the maker at maturity, although he thereby gets more than legal interest for the use of his money.

Whether the sale is made in good faith, or only as a subterfuge to cover usury, is a question for the jury, or the Court trying the cause; and where the Court finds such a sale usurious, and the evidence strongly tends to sustain the finding, the Supreme Court will not disturb it.

The amount charged for exchange cannot be increased in consequence of the length of time a bill has to run: the rate of interest allowed by statute was intended to be the only compensation for the use of the money, and the risk in loaning it.

Where an usurious contract is made in this state, between citizens of this state, and the security taken for its performance requires performance in another state, *held,* that the law of this state decides the fate of the security.

APPEAL from the *Tippecanoe* Circuit Court.

HANNA, J.—This was a suit upon a bill of exchange,

*Tuesday,
November* 23.

Nov. Term,
1858.

Mix
v.
The Madi-
son Insur-
ance Co.

drawn by *Mix*, at *Lafayette*, *Indiana*, upon *Gibson*, *Stock-well & Co.*, of *New York City*, dated *February* 27, 1854, at seven months, for 5,000 dollars, payable to the order of *Bainbridge & Mix*, by them indorsed to *Perdue*, and by him indorsed to the appellees. It was not accepted by *Gibson* and others, but was protested for non-payment. Acceptance was waived.

The defendants filed separate but similar answers. The first paragraph alleges that the bill was indorsed for the accommodation of *Mix*, by *Bainbridge & Mix*, and by *Perdue*, and was by *Mix* given for the sum of 4,645 dollars, 34 cents, at the date thereof for seven months; that 354 dollars, 66 cents, was deducted from the amount of said bill at the time of making the loan; and that said bill is therefore void for usury, under the statute of *New York*, which is set out, and which declares all contracts void by which more than 7 per cent. interest is reserved.

The second paragraph alleges that said bill was made by *Mix* and indorsed for his accommodation, and was given to the plaintiff for the sum of 4,645 dollars, 34 cents, loaned to him by said plaintiffs—354 dollars, 66 cents, being reserved as interest, being at the rate of 12 per cent. per annum.

There was a demurrer filed to the first paragraph of the answer, and a general denial to the second. The demurrer was sustained. Trial by the Court of the issue on the second paragraph; finding and judgment for plaintiffs for 4,645 dollars, 34 cents. A bill of exceptions contains the evidence. Judgment for defendants for costs. Exceptions were taken by both parties and cross errors assigned upon the record in this Court. The first question to be determined is, was the transaction usurious?

The plaintiffs proved by *Alfred Dunning*, cashier of said company, that defendants were residents of *Lafayette*, *Indiana;* that the bill was discounted on the 27th of *February*, 1854, at *Madison*, by plaintiffs, and that there was taken off the amount of the bill 177 dollars, 33 cents, for interest, and the same amount for exchange; that one-half per cent. per month for the time a bill had to run, was the

usual rate of exchange deducted by plaintiffs; that at the time the bill fell due, sight exchange was selling at one and a half per cent. premium on *New York*.

*Edwin G. Whiting* testified that from the date to the maturity of said bill, he was a resident of *Madison*, and president of the *Indiana Bank;* that on and about the 27th of *February*, 1854, that institution sold sight bills on *New York* at one-half per cent. premium, and purchased from one-half per cent. discount to par. On time bills there was discounted from one-fourth per cent. for thirty day bills, up to 2 per cent. for bills at four months; if the bill had longer to run, about one-half per cent. per month was discounted.

*Nathan Powell* testified that he was, at the date of the bill, a member of the exchange committee of plaintiffs, and president; that the bill was presented for discount by defendant, *Mix;* that the amount of interest and exchange charged on the bill was by witness and said *Mix* agreed upon before the bill was discounted; that the exchange was at the rate of one-half per cent. a month, in addition to 6 per cent. interest per annum.

The defendants proved that the bill was procured and used by the defendant, *Mix*, in his business, and that the other defendants were mere accommodation indorsers; that at the date of the bill, and for several years previous thereto, and from thence down to the time of the trial, sight exchange at *Madison*, upon the city of *New York*, was always sold by the institutions engaged in selling exchange at a premium varying from one-half to one and a half per cent. The defendants gave no evidence in reference to bills which had a length of time to run before maturity.

It is urged by the appellants that the transaction was a mere loan of money by the appellee, to be repaid in seven months, and that it was tainted with usury. Upon the other hand, it is insisted that it was a sale and purchase of a bill of exchange made in good faith, and that the question of usury cannot therefore arise.

" It is quite settled that negotiable paper may be sold for

Nov. Term,
1858.

Mix
v.
The Madi-
son Insur-
ance Co.

less than its face, and the purchaser can recover its whole amount from the maker when it falls due, although he thereby gets much more than legal interest for the use of his money." 2 Pars. on Cont. 421.

Whether it is a *bona fide* sale, or resorted to as a subterfuge for the purpose of covering usury, is, we conceive, a question for the jury, or Court sitting as a jury to try the cause. *Id.* 428.—13 Peters, 77.—13 Curtis, 47. The circuit judge, by his finding, in effect determined that the transaction was a loan of money, and not a purchase of the bill of exchange. As the evidence strongly tends to sustain that view of the case, we cannot, according to our uniform rule of decision, in reference to findings and verdicts, disturb the finding upon that point.

Viewing the transaction, then, as a loan of money by the company to *Mix*, and admitting that it was to be paid in *New York*, is it tainted with usury?

It is clear, from the evidence, that at the time the company obtained possession of this bill, sight exchange on *New York* was worth par, perhaps a premium, even at the counter of this company. Then we are asked whether the legal right exists to increase the amount of what is called exchange, in consequence of the length of time a bill has to run until maturity; or is the rate of interest fixed by the statute, which in this state is 6 per cent. per annum, intended by the law-makers to be in full compensation for the use of the money, and the risk in loaning the same? By the appellants, it is insisted that the finding of the Court below, sitting as a jury, was, that the transaction was usurious, and that this Court ought not to disturb that finding. By the appellee, it is urged that there is no conflict of testimony upon the rate of exchange on time bills, and that this Court should determine what the law is upon the undisputed facts. We have alluded to the substance of the testimony introduced by the appellee, in reference to the customary rates of exchange on bills payable at a future day. The appellants gave no evidence upon that point. Their evidence was as to the rates of exchange on bills payable at sight. There is, therefore, no

Nov. Term,
1858.

Mix
v.
The Madison Insurance Co.

conflict of testimony to reconcile, or evidence to weigh, which would bring the case within the line of decisions applicable to findings and verdicts, heretofore referred to. Conceding that the evidence shows the existence of a custom at *Madison* of reserving, under the name of exchange, about one-half per cent. per month for the time the bill had to mature, the simple question is, can such custom be reconciled with our statute upon the subject of interest. That statute is:

" Sec. 1. Interest upon the loan or forbearance of money, goods, or things in action, shall be at the rate of six dollars a year, upon one hundred dollars; and no greater rate of interest shall be taken, directly or indirectly. But it may be taken yearly, or for any shorter period, in advance, if so expressly agreed."

Again:

" Sec. 4. If a greater rate of interest than is hereinbefore allowed, shall be contracted for, or received, or reserved, the contract shall not therefore be void; but if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the defendant shall recover costs; and the plaintiff shall recover only his principal without interest; and if interest shall have been paid thereon, judgment shall go for the principal, deducting interest paid."

Assuming that the Court below came to the conclusion that this was a loan, and that we will not disturb that conclusion, it is clear, that if the contract was, by any understanding or intention of the parties, to have been performed in this state, it would be usurious. If it was a loan of money in good faith, to be repaid in *New York*, the lender was entitled to contract for and receive the rate of interest allowed by the law of *New York*, which is, as shown by the pleadings, 7 per cent. *Andrews* v. *Pond*, 13 Peters, 73.—Story's Confl. of Laws, §§ 291, 292. But in point of fact, the interest was not calculated at 7 per cent., but at 6; the evidence indicated that if it was the intention of the parties to conform to any law relative to the rates of interest, it was the law of *Indiana*. The

Nov. Term,
1858.

Mix
v.
The Madi-
son Insur-
ance Co.

amount of the judgment shows that the Court found the contract to be tainted with usury. We cannot disturb that finding. The plaintiff reserved at the rate of 12 per cent. per annum. The evidence is clear that exchange on the city of *New York*, payable at sight, was, for several years before the making of said bill, and up to the time of trial, to-wit, *July*, 1855, selling at the city of *Madison* at a premium. If the right exists, under any state of facts, to charge a premium, bonus, or exchange, based upon the time given for the payment of money, at a place distant from the place where the contract is entered into, we cannot see how it can exist in this case upon the facts proved. There was no evidence of the amount it would cost to carry specie from the one place to the other; nor of the state of the trade; nor of the demand for remittances, or the quantity of exchange in market for sale; nor upon any of those points which are supposed to enter into and control the market price of exchange between commercial places.

This being a usurious contract, a question is raised as to the effect the reservation of illegal interest has upon that contract. It will be recollected that the contract was made in *Indiana*, by citizens of this state, but the security taken for the performance of the contract, upon the face of it, required performance in *New York*. Can the plaintiff recover, under the laws of *Indiana*, the amount paid out; or, is the contract, under the law of *New York*, void? In other words, does the law of the place where the contract is made, or the law of the place where that contract is to be performed, govern and decide the fate of the security taken upon this usurious agreement? We think this case falls clearly within the reasoning of the Supreme Court of the *United States*, in the case of *Andrews* v. *Pond*, before referred to.

" A rate of interest forbidden by the laws of *New York*, where the contract was made, was reserved on the debt actually due; and it was concealed under the name of exchange, in order to evade the law. Now if this defense is true, and shall be so found by the jury, the question is

not which law shall govern in executing the contract; but which is to decide the fate of a security taken upon an usurious agreement, which neither will execute. Unquestionably it must be the law of the state where the agreement was made, and the instrument taken to secure its performance. A contract of this kind cannot stand on the same principles with a *bona fide* agreement, made in one place to be executed in another." 13 Peters, 78.—Story on Confl. of Laws, § 293.

In this case, the Court, sitting as a jury, has passed upon the question of good faith in the transaction, and under the finding, the law of the place where the contract was entered into must control.

The demurrer to the first paragraph of the answer was correctly sustained, for the reason that, if the company had the right to take and reserve from the amount of the bill, the sum named in said paragraph as having been so taken, for interest and exchange, then said paragraph was no answer to the action; and if the reservation of that sum was illegal under the laws of this state, and the contract such as the laws of neither state would sustain, it was, therefore, so far as the question of validity is involved, governed by the laws of the place where made. See authorities above cited, and, also, 2 Kernan, 501.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*H. W. Chase* and *J. A. Wilstach*, for the appellants.

*R. C. Gregory*, *R. Jones*, and *J. M. Spencer*, for the appellees.