O'TOOLE et al. v. MEYSENBURG et al.

MEYSENBURG et al. v. O'TOOLE et al.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1918.)

Nos. 4875, 4879.

1. USURY ☞16—WHAT CONSTITUTES.
An agreement that land mortgaged to secure certain indebtedness should stand as additional security for other indebtedness secured by deed of trust on other property *held* not usurious; foreclosure of deed of trust having resulted in a deficiency in excess of the additional security.

2. USURY ☞53—WHAT CONSTITUTES—COMMISSION FOR MAKING LOAN.
Where a creditor, to facilitate the debtor's exchange of property, made new loans and assisted in transfer of securities, etc., a payment for the creditor's services and use of his credit must be deemed a commission for making the loan, and to constitute usury, where it increased the compensation for the creditor's use of funds beyond the legal rate of interest.
[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Usury.]

3. USURY ☞65—WHAT CONSTITUTES.
A payment in addition to the legal rate of interest for the extension of an existing loan is usurious.

4. USURY ☞23—WHAT CONSTITUTES.
Where a creditor exacted the legal rate of interest, a sum added to the principal of the note for the purpose of making it even money, etc., is usury.

5. USURY ☞49—WHAT CONSTITUTES—INTEREST.
Past-due interest may be added as principal by an agreement after it is due, without subjecting the transaction to taint of usury.

6. USURY ☞2(1)—WHAT LAW GOVERNS.
The intention of the parties as to the law they desired to apply to a contract will govern, if such selection be made in good faith, and be not opposed to the public policy of the forum.

7. USURY ☞2(2)—CONTRACTS—ENFORCEMENT.
It is not, generally speaking, against public policy to enforce a contract usurious at the forum, but valid at its situs.

8. USURY ☞117—CONTRACTS—WHAT LAW GOVERNS.
Evidence *held* to show that a contract was a Missouri contract, though the note was on a printed form, dated "Grafton, Ill.," for a sum made payable at that place.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. USURY ☞113—WHAT LAW GOVERNS—PRESUMPTION.
    When a contract is usurious in all jurisdictions, and its situs is uncertain, the courts will not indulge the presumption that the parties had in mind the usurious character of their transaction, and intended to select the situs where the least penalty was imposed.

10. MORTGAGES ☞490—FORECLOSURE—OBLIGATION.
    Where a creditor. after the execution of a deed of trust, paid taxes on the land, he is on foreclosure entitled to be compensated for the same.

Cross-Appeals from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by Robert L. Meysenburg and another against Joseph P. O'Toole and others. From decree of foreclosure, both parties appeal. Reversed and remanded, with directions to enter decree as indicated.

Edward J. Vaughn, of Los Angeles, Cal., and John M. Moore, W. B. Smith, J. Merrick Moore, and H. M. Trieber, all of Little Rock, Ark., for plaintiffs.

Marion C. Early, of St. Louis, Mo., and Rose, Hemingway, Cantrell, Loughborough & Miles, of Little Rock, Ark., for defendants.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. From a decree in foreclosure of deed of trust cross-appeals are here. The dispute is entirely concerned with the amount allowed by the decree. The appellants (defendants) claim that it should be materially reduced because of the inclusion of usurious items, and also because a credit should have been allowed for a sum realized in another foreclosure upon other land. The plaintiffs claim the decree should be augmented by the amount of a commission ($1,100) which was deducted by the court as usurious. The court excluded several items as usurious and gave judgment for the balance, with interest. Our determination is an affirmance of the action of the trial court, with a slight difference in the amount of the decree, due doubtless to error in computation of interest.

The note secured by the deed of trust was dated April 30, 1914, and was for $38,500, bearing 6 per cent. annual interest. The foreclosure decree was of October 23, 1916, and covered this note and subsequent tax payments, with interest upon both. This note was composed of the following items: An earlier 90-day note, dated March 13, 1912, for $30,000, with interest. Of this interest $3,338.85 was unchanged in form; the remaining $450 had been included in a note for $1,000, dated June 12, 1912, with $550, which was a commission paid for an extension of the $30,000 loan. Therefore the first two items were $33,338.85 and $1,113 ($113 being interest on the $1,000 note). The next item was for $2,673.30, which represented principal ($2,500) and interest of a note given December 4, 1912, to procure a further extension. The other items, except two, were for undisputed expenditures made in connection with the property, such as taxes, abstracts, etc., which total $811.76. Of the two other items, one was the sum of $400 advanced to defendants to pay a broker for securing a loan to plaintiff, with the $38,500 note as collateral. The plaintiff re-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fused to take a new note, unless the defendants procured such a loan for him. They were compelled to employ a broker, and borrowed this sum from plaintiff to pay the brokerage. The above items total $38,-336.91. For the purpose of making the note an even amount to aid its business use, the parties added $163.09, the last item. Defendants contend that of the above items the $30,000 note, with its interest, the two notes for $2,673.30 and $1,113, and the added item of $163.09, are usurious. The $30,000 note was made up of three items—$22,000 cash, $6,900 to additionally secure another loan, and $1,100 commission for making the loan. The cash item is not challenged. The other two are

These two items came from rather involved dealings as follows: At the time of and prior to the making of the note for $30,000, William H. Journey was the owner of 207 acres of farm land near Grafton, Ill., and at the same time his mother owned an adjoining 160 acres. The title to the farm owned by Journey, as well as to his home at Grafton, was in Meysenburg's name, but was really held by him as security for a debt of $24,000 due from Journey. Shortly before the execution of the note, Journey and other parties, desiring to acquire the Arkansas land covered by the deed of trust foreclosed in this case, had arranged a trade therefor under the following conditions: In return for the Arkansas land was to be given the farms of Journey and his mother, together comprising 367 acres, and $20,000 in cash, to be secured through a loan upon the farm property, less 20 acres; these 20 acres, containing a quarry, Journey was to repurchase for $2,000 cash and a note for $4,000, secured by mortgage on this quarry property. To make this trade it was, of course, necessary to secure the transfer from Meysenburg of the title to the Journey farm of 207 acres, which necessarily involved the release of that property as security for the above $24,000 debt. Journey's home place, the only other security for this debt, appears in the evidence as of little value, so that this step on Meysenburg's part involved the abandonment of practically all of his security for the Journey debt. Meysenburg agreed to reconvey to Journey this farm, taking thereon a deed of trust for $20,000, and to furnish the needed $22,000 cash, which was to be secured by a deed of trust upon the Arkansas property. As, however, this reduced the amount of Meysenburg's security for the $24,000 debt, it was agreed that the Arkansas property should stand as additional security up to $6,900 of the $24,000 indebtedness, so that if the Journey farm, on foreclosure, should not take care of this indebtedness, any balance should be made from the Arkansas property. As compensation or commission for his services in the above transactions, it was agreed that Meysenburg should receive $1,100, to be secured by the Arkansas property, so that the $30,000 note represented the sum of $22,000 cash and the above items of $6,900 and $1,100.

[1, 2] Later there was a foreclosure on the Illinois land, which resulted in a deficiency of more than the $6,900 above provided for. Under this statement it should be evident that this amount is not open to the objection that it was usurious. As to the item of $1,100, it is contended that this was a proper charge for the use of the services and credit of the plaintiff in making the exchange of the properties possible.

251 F.—13

These services and credit were the rearrangement of certain securities for an existing indebtedness and the loan of an additional sum. We see in such no substantial difference from a commission to a lender for making a loan. The finding of the chancellor was to this effect, and should be sustained. Such commissions are usurious. 39 Cyc. 971, and citations.

[3-5] Passing from the $30,000 note to the later items of the larger note which are challenged: The item of $2,673.30 was a note for $2,500 (with interest thereon) given for an extension of existing indebtedness. This was rightly found by the chancellor to be usurious as a commission, for such forbearance is upon the same footing as a commission for making a loan. De Wolf v. Johnson, 10 Wheat. 393, 6 L. Ed. 343; 39 Cyc. 941, and citations. The next item of $1,113 was the principal, $1,000, and interest of a note made up of two items —$550 for a further extension on existing indebtedness, and $450 past-due interest upon the $30,000, note. The first of these items is clearly usurious; the second is not, since past-due interest may be added as principal by an agreement made after it is due. Bramblett v. Deposit Bank, 122 Ky. 324, 92 S. W. 283, 6 L. R. A. (N. S.) 612, and note; Sanford v. Lundquist, 80 Neb. 414, 118 N. W. 129, 18 L. R. A. (N. S.) 633, and note; 39 Cyc. 967, and citations. As to the item of $163.09, added to round out the note for $38,500, that item was clearly no part of the indebtedness supposed to be represented by the note. The chancellor correctly excluded it.

[6-9] As usurious items entered into the note protected by the foreclosure, that entire instrument is tainted. The next cleavage between the parties is as to the effect of this usury upon the amount collectible on the note. This difference arises from a contention as to whether the usury law of Missouri or that of Illinois governs. The Missouri law forfeits interest in excess of 6 per cent. The Illinois law forfeits the entire interest. The question is as to the situs of the contract. The situs of contracts is one of the troublesome problems of private international law, but one rule stands forth clearly: That the intention of the parties as to the law they desired to apply will govern, if such selection be made in good faith, and be not opposed to the public policy of the forum. Wayman v. Southard, 10 Wheat. 1, 48, 6 L. Ed. 253; Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104; Coghlan v. South Carolina R. Co., 142 U. S. 101; [1] U. S. Savings & Loan Co. v. Beckley; 137 Ala. 119, 33 South. 934, 62 L. R. A. 33, and valuable note, 97 Am. St. Rep. 19; 5 R. C. L. 938, 978. It is not, generally speaking, against public policy to enforce a contract usurious at the forum, but valid at its situs. 5 R. C. L. 981, and citations. The good faith of the parties here in their choice of situs is not questioned. It is therefore a question as to their intention. This is to be gathered from the terms of the instrument and from the circumstances surrounding them at the time the contract was made.

The contract, taken alone, at its face value, would suggest an Illinois contract. It is a note upon a printed form, dated "Grafton, Ill.," for a sum of money made payable "at the Grafton Bank." The undis-

[1] 12 Sup. Ct. 150, 35 L. Ed. 951.

puted testimony as to the circumstances surrounding the giving of the note are as follows: The note was actually executed and delivered in Missouri; all of the negotiations took place in Missouri; the major item in the note was an earlier note for $30,000, which by its terms, history, and circumstances was a Missouri contract; that former note had been executed upon a blank form of note of a Missouri bank, at which it was to be placed as collateral for a loan; this later note was to be similarly placed for plaintiff at a certain Missouri bank by defendants; plaintiff refused to take this later note until defendants had so arranged for its hypothecation; the plaintiff swears positively that the parties attached no importance to the form of note, as to where it was dated or payable, and there is no denial of this statement. In short, the contract was made in Missouri; the use of the note was known to and intended by all parties to be in Missouri; it replaced Missouri obligations; no importance was attached to the fact that the form of note filled out purported execution and performance in another state; and the parties had no thought of carrying into their contract any law different from that which had before governed their dealings, or from the place where the contract was made. The result of this combination of circumstances, in our judgment, shows no intention to contract with a view to the Illinois law. It may also be said that, when the contract is usurious in all jurisdictions where any element thereof may exist to which the situs might attach, the court will not indulge in the presumption that the parties had in mind the usurious character of their transaction and intended to select the lightest penalty. Such a selection would be in bad faith and against public policy. Andrews v. Pond, 13 Pet. 65, 10 L. Ed. 61; Heath v. Griswold (C. C.) 5 Fed. 573; Adams v. Robertson, 37 Ill. 45; Mix v. Ins. Co., 11 Ind. 117; Arnold v. Potter, 22 Iowa, 194; Davis v. Tandy, 107 Mo. App. 437, 81 S. W. 457; Craven v. Atl., etc., R. Co., 77 N. C. 289; Daniel, Neg. Inst. § 924; note to 62 L. R. A. at page 60. Therefore the chancellor was right in holding the usury law of Missouri, where the contract was made, to be applicable.

The final contention is that the amount due should be reduced by the more than $16,000 received from foreclosure of the Illinois land under the deed of trust for $20,000. A memorandum agreement between the parties, dated August 19, 1916, and the history of the transactions as given above, show very clearly that this reduction should not be made.

[10] Since execution of the $38,500 note and the deed of trust here under foreclosure, plaintiff has expended $555.66 for taxes upon the land. He is entitled to add this sum, with interest from date of payment, to the amount due upon the note.

The items and amounts which should be considered in reaching the principal due on the note for $38,500 are as follows: The $30,000 note, less the commission of $1,100, or $28,900, with interest at 6 per cent. to April 30, 1914 (date of the note for $38,500), less $450, the portion of the interest which was included in the note for $1,000, dated June 12, 1912; $450, just referred to, with interest thereon from June 12, 1912, to April 30, 1914; the undisputed expenditures

for taxes, abstracts, etc., totaling $811.76; and the amount of $400 advanced to appellants for brokerage. This total, at 6 per centum from the date of the note, plus the taxes paid since, with interest from date of payment, should be the amount for which decree should have been entered. This amount is $39,418.28, and should bear interest at the rate of 6 per cent. per annum from the date of the decree below. To this amount should be added reasonable allowances to the trustee and his attorney, to be determined by the trial court.

The judgment will be reversed and remanded, with instructions to enter a decree in conformity herewith; the costs to be upon the appellees.